PEOPLE v. SMALLWOOD.

1. INFANTS—JUVENILE DELINQUENTS—PROBATE PROCEEDINGS—EVIDENCE—STATUTES.

Statute prohibiting the use of juvenile court proceedings or evidence obtained therein against a child in any other court to discredit him as one possessing a criminal history was enacted for the salutary purpose of protecting the child when it becomes a ward of the State (3 Comp. Laws 1929, § 12834).

2. CRIMINAL LAW—STATUTORY RAPE—NONJURY TRIAL—CREDIBILITY
—NEW TRIAL—JUVENILE RECORDS.

In prosecution for statutory rape upon defendant's own 15-
year-old daughter, tried without a jury, wherein conviction
was based solely on the daughter's testimony, exclusion on
interposed objection of question as to whether she had not
been in trouble with the juvenile authorities before, on ground
that juvenile records were not admissible, *held*, to warrant
the granting of a new trial, notwithstanding girl's wayward-
ness was shown to a certain extent by subsequent testimony,
since all facts pertaining to the credibility of the principal
witnesses should have been brought out and a hostile motive
has been shown for her accusations made against her father
(3 Comp. Laws 1929, § 12834).

3. NEW TRIAL—RECANTING AFFIDAVITS—PERJURY.

In determining whether or not a motion for a new trial should
be granted, a court is not usually impressed by the recanting
affidavits of witnesses who attempt to show that they perjured
themselves at the trial.

BOYLES, C. J., and NORTH and SHARPE, JJ., dissenting.

Appeal from Recorder's Court of Detroit; Scal-
len (John P.), J. Submitted April 15, 1943.
(Docket No. 78, Calendar No. 42,073.) Decided June
30, 1943. Rehearing denied September 7, 1943.

James Smallwood was convicted of statutory rape.
Reversed and new trial granted.

*James Smallwood, in pro. per.*

*Herbert J. Rushton*, Attorney General, *Edmund
E. Shepherd*, Solicitor General, *William E. Dowling*,·
Prosecuting Attorney, and *Henrietta E. Rosenthal*
and *Ralph Helper*, Assistant Prosecuting Attorneys,
for the people.

BUTZEL, J. James Smallwood was found guilty
of statutory rape and on September 2, 1938, was
sentenced to imprisonment for a term from 10 to
30 years. The case was tried without a jury. The
prosecuting witness against whom it is alleged the

crime was committed was defendant's own daughter, a girl 15 years of age. The wife of defendant and mother of the girl had disappeared and deserted defendant and their four children. Defendant did not obtain a divorce. He was 39 years of age and had been out of work for a year prior to the time the alleged crime was committed. The family was poor. Most of the members slept in one bedroom, defendant and a son occupying one bed and the girl and her sister the other one. Defendant at one time had a housekeeper and after she left his employ, he still kept company with her. He attempted to show that he had illicit relations with the housekeeper four or five times a week and therefore was not apt to have any unnatural desires. The judge in denying motion for a new trial, however, called attention to the relations of defendant with his former housekeeper, probably for the purpose of showing defendant's lack of credibility.

The conviction was based solely on the daughter's testimony. Defendant categorically denied the charges. When it was shown from a physical examination that the girl must have had previous illicit relations, she testified that defendant had begun them with her two years previously. The daughter was a wayward girl and previously had been interviewed by the authorities. After defendant's trial, she was sent to the girls' training school at Adrian, Michigan. Defendant showed that he had had considerable difficulty with the girl. At one time he consulted a child psychologist connected with the Highland Park public schools and later the girl went to see the psychologist without defendant. It is questionable whether a guilty man would run the risk of being exposed in this manner.

The day before the charge against defendant was made, he had an altercation with the girl. She had persisted in wearing what was called a "sun" or

"gymnasium" suit, and her father objected, claiming that it caused indecent exposure. As a punishment, he told the girl she would have to remain indoors that evening. She, however, ran away. Defendant sought the aid of the police in order to find her. It was not until early the following morning that the girl was found. She claimed a man had forced her into a garage but that she escaped. While defendant was at the police station cooperating with the police, he was arrested. The charge against him was made for the first time by the girl when the police had her in custody.

The trial judge undoubtedly was very much troubled by the case. Defendant sent him letters from prison and the judge interviewed the prisoner a number of times. He also arranged to have defendant brought to East Lansing, where a lie detector was used and defendant's reaction was not favorable. When the girl's veracity was tested in a similar manner, she refused to answer crucial questions. In an affidavit made after she was sent to the Adrian school, the girl stated that her father was innocent, that she had previously lied in the belief that if she stuck to her story, she would be released and that she was angry with her father when she made the charge and believed if he were out of the way, she would be free to do as she pleased. She named two different persons with whom she had had the alleged illicit relations. She positively stated her father was not guilty. This recantation occasioned a further investigation by the trial judge, as a result of which a motion for new trial was denied.

The superintendent of the girls' training school at Adrian also made an affidavit in which she stated that the girl told her that the charges she had made against her father were untrue, that she had made

them in the belief that she would not be sent to any institution, and that she had been antagonistic towards her father because he had unjustly reprimanded and punished her.

When the daughter was on the witness stand she was asked on cross-examination whether she had not been in trouble with the juvenile authorities before. On objection, the court excluded the question, stating that the ''juvenile records are not admissible.'' The applicable statute is as follows:

''A disposition of any child under this act or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court be lawful or proper evidence against such child for any purpose whatsoever, except in subsequent cases against the same child under this act.''   3 Comp. Laws 1929, § 12834 (Stat. Ann. § 25.291).

There is no question but that this salutary statute is for the purpose of protecting a child when it becomes a ward of the State.   Its aim is ''to hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past.'' *State* v. *Guerrero,* 58 Ariz. 421 (120 Pac. [2d] 798). It prohibits the use of juvenile court proceedings or evidence obtained therein against a child in any other court to discredit him as one possessing a criminal history.   *Malone* v. *State,* 130 Ohio St. 443 (200 N. E. 473).   However, in the present case there was no effort to impeach the child's character but rather to ascertain her credibility.   The question of how far the statute should reach is not new.   It has been the subject of comment by the textbook writers. We quote from 1 Wigmore on Evidence (3d Ed.), p. 675:

''In charges of rape, incest, et cetera, where the complainant is a young girl, her credibility may be

affected by her unchaste tendencies. False charges of the sort by girls of such tendencies are not uncommon. Unless that tendency is inquired into, the story becomes plausible, and many a man has probably gone to the penitentiary as the innocent victim of such tales. The juvenile court record of the complainant should unquestionably be admitted; to exclude it is a suppression of means of truth, and is indefensible on any ground; in this aspect these statutes are unscientific and antisocial.''

In 3 Wigmore on Evidence (3d Ed.), p. 460 *et seq.*, quotations are given from many leading authorities showing that errant young girls frequently have psychic complexes that lead them to contrive false charges of sexual offenses by men, resulting sometimes in expressions of imaginary sex incidents of which the narrator is the heroine or the victim. While we agree with the judge that the juvenile records are not admissible, the question asked did not refer to the ''disposition of the child'' or any evidence given in the case. The question as framed was proper and it should not have been excluded. As was stated in *People* v. *Cowles,* 246 Mich. 429:

''We think the testimony should have been received, not in extenuation of rape, but for its bearing upon the question of the weight to be accorded the testimony of the girl and the question of whether the mind of the girl was so warped by sexual contemplation and desires as to lead her to accept the imagined as real or to fabricate a claimed sexual experience.''

We can well appreciate the difficulties that the trial judge had with the case, and also the advantage he had of seeing the witnesses. However, this is a case where the word of one person against another is determinative. Although the girl's waywardness

was shown to a certain extent by subsequent testimony, a careful reading of the record does not satisfy us that the entire facts were disclosed. Where the question was so close, all facts pertaining to the credibility of the principal witnesses should have been brought out. The case in many respects is similar to *People* v. *Van Den Dreissche,* 233 Mich. 38, where the court held that a motion for a new trial based upon the affidavit of the daughter in which she recanted the testimony given by her upon the trial was properly denied, under the circumstances there presented. In a dissenting opinion signed by two justices, it was stated that they could not understand why so much credence was given to the girl's veracity on the trial and so little after she had shown herself to be unworthy of belief. It may be further added that there was nothing in the opinion to show that the girl in that case had any motive in charging her father with the commission of the crime. In the instant case, such a motive seems to have been present. As a rule the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial. *People* v. *Simon,* 243 Mich. 489; *People* v. *Shilitano,* 218 N. Y. 161 (112 N. E. 733, L. R. A. 1916 F, 1044); *People* v. *Marquis,* 344 Ill. 261 (176 N. E. 314, 74 A. L. R. 751). However, in the instant case, the girl has shown both a lack of morals and a hostile motive for having made the charge. We believe the interests of justice will be subserved if there is a new trial.

Defendant raises other questions that we do not believe it is necessary to answer. He appears *in pro. per.* and we are quite satisfied that if he had counsel, the questions would not even be raised. There is merit in his claim that too much latitude

was given one witness and hearsay evidence was thus introduced. This will not occur on a new trial.

Judgment reversed and new trial ordered.

CHANDLER, STARR, WIEST, and BUSHNELL, JJ., concurred with BUTZEL, J.

BOYLES, C. J. (*dissenting*). I cannot concur in reversal on the ground stated by Mr. Justice BUTZEL. This 15-year-old witness, on cross-examination, was asked:

"Now, Cathleen, you have been in trouble with the juvenile authorities before?"

The trial court, hearing the case without a jury, considered this to be an invasion of juvenile records and excluded the answer. Mr. Justice BUTZEL holds that the exclusion of the answer to this question was reversible error. While this ruling might have been premature, anticipating an actual attempt to offer the records in evidence, it was not reversible error. The reference to "juvenile authorities" could mean but one thing, namely, the probate judge as judge of the juvenile court, and the officers of that court. 3 Comp. Laws 1929, § 12834 *et seq.* (Stat. Ann. § 25.291 *et seq.*). The question called for a "yes or no" answer, and its exclusion is not of sufficient importance to justify a reversal solely on that ground. The only purpose of the question was to test the credibility of the witness. In trial without jury, credibility of the witness and the weight to be given her testimony was for the court (*Cook* v. *Lake*, 292 Mich. 689), and the trial judge had ample opportunity to observe the demeanor of the witness and hear her testimony. Had the answer been received, any follow-up of an inquiry into the records of the juvenile court would of necessity have been excluded.

My Brother. quotes from *People* v. *Cowles,* 246 Mich. 429. To understand the connection, the entire quotation should be considered:

"Evidence offered to prove acts of the girl showing sexual perversion and lascivious conduct, inclusive of exposure of her person to school boys, was excluded. We think the testimony should have been received, not in extenuation of rape, but for its bearing upon the question of the weight to be accorded the testimony of the girl and the question of whether the mind of the girl was so warped by sexual contemplation and desires as to lead her to accept the imagined as real or to fabricate a claimed sexual experience."

The testimony thus excluded, which this court said should have been received, had no connection with or reference to trouble with juvenile authorities. The case is not authority for permitting the opening of an inquiry into juvenile records. Unless the transgression of a juvenile is of sufficient importance to reach the criminal court by way of the waiver route from the juvenile court (Act No. 288, chap. 12, § 26, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 16289–12 (26), Stat. Ann. 1942 Cum. Supp. § 27.3178 (596)]), sound public policy, as well as the statute in question, requires that the mantle of privilege should protect the child from public inquiry into the acts of the juvenile court.

In this case, a delayed motion for new trial was filed, heard and denied by the lower court nearly two years after conviction and sentence. Error in the denial of this motion is now relied on for reversal. A reading of Mr. Justice Butzel's entire opinion leads to a fair inference that the real reason therein for reversal and granting a new trial is because the conviction was against the great

weight of the evidence and that the motion for new trial should have been granted. The motion was mainly based on a claim of new testimony—that the girl had later repudiated her former testimony. We have frequently looked with disfavor on later admissions by a witness, that he or she had committed perjury in the trial, as a ground for granting a new trial. There was no abuse of discretion by the trial court in the case at bar in denying the motion. Plainly, a new trial (if one were held) would result in acquittal, if the complaining witness should, adhere to her subsequent repudiation of her testimony. Under quite similar circumstances, this court upheld the lower court's denial of a new trial in *People* v. *Van Den Dreissche,* 233 Mich. 38.

I agree that the other questions raised do not require reversal. The conviction and sentence should be affirmed.

NORTH and SHARPE, JJ., concurred with BOYLES, C. J.