PEOPLE *v.* DAVIES

OPINION OF THE COURT

1. CRIMINAL LAW—WITNESSES—IMPEACHMENT—JUVENILE RECORD.
   The statute prohibiting the use against a child of the record of disposition of a charge of committing a juvenile offense does not prohibit the use of his juvenile record to impeach his credibility when he testifies against someone else (MCLA § 712A.23).

2. CRIMINAL LAW—WITNESSES—IMPEACHMENT—CONVICTIONS—JUVENILE RECORD.
   The credibility of a witness may be impeached by showing his past conviction record, including the witness's juvenile record (MCLA § 712A.23).

3. WITNESSES—CREDIBILITY—JUVENILE RECORD.
   No sound reason exists for excluding the history of juvenile offenses where the case is not "against" the juvenile offender but against someone else whose liberty is at stake; the jurors are entitled to know what "manner of person" a witness is.

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 5] 58 Am Jur, Witnesses § 736.
[4] 30 Am Jur 2d, Evidence § 1168.

4. Criminal Law—"Reasonable Doubt"—Lack of Evidence.

A "reasonable doubt" in a criminal proceeding may arise from the lack, want, or insufficiency of the evidence produced by the people; the trial court's instructing the jury that a reasonable doubt may not be based on the lack or unsatisfactory nature of the evidence was error.

Dissent by Danhof, J.

5. Criminal Law—Witnesses—Impeachment—Juvenile Record—Disposition of Charge.

A witness may not have his credibility impeached by questioning him regarding a disposition of a juvenile case in which he was the defendant.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 March 8, 1971, at Detroit. (Docket No. 10591.) Decided May 21, 1971. Leave to appeal denied, 385 Mich 773.

David Anthony Davies was convicted of placing an explosive substance near a building with intent to destroy or injure it. Defendant appeals. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Jack J. Kraizman,* for defendant on appeal.

Before: Danhof, P. J., and McGregor and Levin, JJ.

Levin, J. The defendant, David Anthony Davies, was convicted by a jury of the crime of placing an explosive substance against or near a building with

intent to destroy or injure it.    MCLA § 750.206
(Stat Ann 1962 Rev § 28.403).

A store located on the northeast corner of Puritan
and Freeland in Detroit was damaged by an explo-
sion sometime between 10:30 and 11 p.m. on June
16, 1969.

Gary Brudna, age 14, and Richard Jordan, age
15, were walking together on the south side of
Puritan toward the intersection where the store was
located.   When they reached the middle of the block,
some 100 feet from the intersection, Brudna noticed
another person whom he later identified to be the
defendant Davies.   Brudna said that Davies was
running toward them (and the store) on the north
side of Puritan, that he crossed Freeland, put
something down, ran back and the explosion then
occurred.   It was dark, but there were street lights.

A police car arrived soon after the explosion and
Brudna and Jordan were taken into custody.   Brud-
na told the police that he had seen a person run
across the street but, although he again saw Davies
while he was in custody, he did not name Davies as
the felon until the day after he was arrested.   Brud-
na said that he was not asked to name the felon
when first arrested.

Davies' attorney sought to impeach Brudna by
asking him whether he had ever been convicted of
an offense, but the trial judge refused to allow any
inquiry concerning Brudna's record of conviction
of juvenile offenses.

Although Brudna was positive in his identifica-
tion, Jordan was not.   Jordan identified Davies as
the culprit, but conceded that he couldn't be 100%
sure.   He explained that he "wasn't paying no at-
tention, when I seen him across the street I just
happened to glance over; by that time he was right

across from me, straight from me and there was a building there and then he was gone". He said that it would be a fair statement to say that he saw someone who "looked like the defendant".[1]

Davies testified that he was at home when he heard the explosion. His mother and three friends who were visiting at his home supported his alibi. Davies said that his curiosity was aroused by the noise of the explosion and he left for the scene and remained about ten minutes. He saw Gary Brudna sitting in a squad car. He had met Brudna once before but didn't know his name. He did not know Richard Jordan. He claimed, on redirect examination, that he saw Tim Anderson, a close friend, with a bomb going in the direction of the store. He had not told anyone about Anderson until the day before the trial when he told his attorney. He explained that he thought he could beat the case and didn't want to get Tim in trouble.

Tim Anderson was called. He said that he had visited at the Davies' home in the early evening of June 16th. He recalled the bombing. When asked whether he was at the Davies' home after 8 o'clock he refused to answer on the ground that it might incriminate him. He knew that the defendant

---

[1] Jordan was not detained by the police overnight. He was promptly released to his parents.

On cross-examination Jordan said he could not see "for positive". He conceded that he could not identify the defendant "at that moment" and that he didn't decide that the man he saw was the defendant Davies "right away. Me and Gary talked about it, we didn't think that much about it, I don't know, it was a little while after that, a day or something, I thought about it." He decided it was Davies "that night, but I didn't say anything, because I couldn't say a hundred percent sure who it was". In response to the question, "Is it true that you cannot identify the person who was at the doorway of the Ida Realty Company?" he said, "yes, sir".

On redirect he was asked, did he "ever talk over the identification with Gary that night or the next day" and he replied, "no, sir". In response to the question, "Do you still believe it to be the defendant?" he said, "yes, sir, I do".

Davies had not set the bomb but refused to say how he knew it or to answer other questions on the ground that it would or might incriminate him.

The judge charged the jury in part:

"A reasonable doubt then is not a possible doubt but a fair doubt, a doubt based on reason and common sense. It is a doubt growing out of the evidence. It,—here is the key of it, it grows out of the evidence, not outside the evidence, or lack of evidence or the unsatisfactory nature of the evidence and it is such a doubt that after you have heard it all you cannot say that I have an abiding conviction to a moral certainty of the defendant's [guilt]."

The defendant's attorney, although given an opportunity, did not object to the instruction.

After retiring to consider its verdict, the jury asked to have Brudna's testimony read back but the judge refused to grant the jury's request. While no assignment of error is made in this regard, the jury's request does indicate the importance which it attached to Brudna's testimony.

There is no merit in Davies' contention that there was insufficient evidence to convict him of the offense beyond a reasonable doubt. The issue of his guilt or innocence turned on the credibility of the witnesses. It was within the jury's authority to disregard Davies' testimony and the testimony of his alibi witnesses and to credit the testimony of the one positive identification witness, Gary Brudna, and the doubtful identification witness, Richard Jordan.

The judge erred, however, in refusing to permit the defendant's attorney to inquire concerning Brudna's record of conviction of juvenile offenses. The statute which prohibits the use "against" a child of the record of disposition of a charge of

committing a juvenile offense does not prohibit the use of his juvenile record to impeach his credibility when he testifies against someone else.

The statute provides:

"A disposition of any child under this chapter or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter." MCLA § 712A.23 (Stat Ann 1962 Rev § 27.3178 [598.23]).

The statute was first construed in *People* v. *Smallwood* (1943), 306 Mich 49, 53, 54. Smallwood was convicted of statutory rape. On cross-examination the girl was asked whether she had ever been in trouble with the juvenile authorities. The question was excluded on the ground that "juvenile records are not admissible". The Michigan Supreme Court declared:

"in the present case there was no effort to impeach the child's character but rather to ascertain her credibility.   *   *   *

"While we agree with the judge that the juvenile records are not admissible, the question asked did not refer to the 'disposition of the child' or any evidence given in the case. The question as framed was proper and it should not have been excluded."

In *People* v. *Brocato* (1969), 17 Mich App 277, 286, the defendant was convicted of taking indecent liberties with a girl under the age of 16. Before trial the defendant had sought and was refused discovery of, among other things, certain juvenile court records relating to the girl. In reversing on other grounds, we said that her juvenile court records might be discoverable:

"It would appear that under *People* v. *Smallwood* (1943), 306 Mich 49, the complainant's experience with juvenile authorities was a proper subject of trial inquiry. Perhaps the records would contain something that would have a legitimate bearing on the credibility of the complainant."

In *People* v. *Luther* (1969), 20 Mich App 42, 47, in reversing a conviction because of the use against a defendant for impeachment purposes of testimony given at his juvenile court waiver hearing, we said:

"There is an obvious distinction between impeaching a *witness's* credibility and impeaching a defendant with information obtained at a juvenile waiver hearing before the probate court." (Emphasis supplied.)

In *People* v. *Bol* (1970), 23 Mich App 244, the defendant, a shift supervisor at a county children's home, was convicted of interfering with the custody of a minor. The victim was a 15-year-old minor who had a history of being a runaway. We reversed the defendant's conviction because the court had refused to allow him to make a special record of the testimony of a psychologist who had examined the minor at the request of the juvenile court for the purpose of assisting the juvenile authorities. We said that, in the light of *Brocato* and because the question of the complainant's credibility was very much at issue, it did not appear that the information concerning her juvenile record was privileged under the statute.

The people's argument that the *Smallwood* and the subsequent judicial statements should be restricted to cases involving sexual offenses is unpersuasive. Here, as in *Smallwood* and the other cases, the people's case against the defendant turns on the credibility of a juvenile witness. It is an established

rule of law that the credibility of a witness may be impeached by showing his past conviction record. In this very case, the defendant Davies' past conviction record was spread before the jury, no doubt seriously impairing his cause.

There is no sound reason for excluding the history of juvenile offenses in a case not "against" the juvenile offender but against someone else whose liberty is at stake. If, as is the law, the jurors are entitled to know "what manner of person the defendant is" if he takes the stand, surely they are also entitled to know what manner of person the people's chief witness is.

In this connection it is relevant that our Court has held that a judge may consider a defendant's juvenile record in imposing sentence.[2] Clearly, if the policy of the statute does not protect the juvenile against use of his juvenile record against him when he is sentenced for another crime, it is not so pervasive that it protects him against disclosure of his record when he is a witness—here the chief, perhaps an indispensable, witness—against someone else.

The record does not show whether Brudna did in fact have a juvenile record. If he did, then Davies is entitled to a new trial.

Although there was no objection to the instructions, since the case may be retried it is appropriate to advert to this claim of error.[3]

A reasonable doubt may arise "from the lack, want or insufficiency of the evidence for the State",[4] and, therefore, it was error to instruct the jury, as

---

[2] *People* v. *Charles Williams* (1969), 19 Mich App 544; *People* v. *Davidson* (1970), 23 Mich App 4.

[3] See fn 5.

[4] See 1 Underhill's Criminal Evidence (5th ed), § 27, pp 33, 34, fn 25; 1 Wharton's Criminal Evidence (12th ed), § 12, pp 34–36, fn 18; 30 Am Jur 2d, Evidence, § 1171, p 351, fn 2.

the judge did here, that a reasonable doubt may not be based on lack of evidence or the unsatisfactory nature of the evidence.

In *People* v. *Stubenvoll* (1886), 62 Mich 329, 334, the Michigan Supreme Court declared:

"We do not think that the phrase 'reasonable doubt' is of such unknown or uncommon signification that an exposition by a trial judge is called for. Language that is within the comprehension of persons of ordinary intelligence can seldom be made plainer by further definition or refining. All persons who possess the qualifications of jurors know that a 'doubt' is a fluctuation or uncertainty of mind arising from *defect* of knowledge or *of evidence* [emphasis supplied], and that a doubt of the guilt of the accused, *honestly entertained,* is a 'reasonable doubt.' " (Emphasis by the Court.)

Remanded for further proceedings consistent with this opinion.[5]

McGREGOR, J., concurred.

DANHOF, J. (*dissenting*). I cannot agree with the majority on their interpretation of MCLA § 712A.23 (Stat Ann 1962 Rev § 27.3178 [598.23]). This statute provides:

"*A disposition of any child* under this chapter or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter." (Emphasis added.)

---

[5] We see no need to decide whether the unobjected-to instructional error entitles Davies to a new trial. If Brudna did not have a juvenile record, and Davies does not obtain a new trial, he may apply for further consideration by our Court, and we retain jurisdiction for that purpose.

On cross-examination the witness, Brudna, was asked, "Have you ever been convicted of a crime?" Earlier the defense attorney had established that the witness was 14 years old at the time of the offense and 15 years old at the time of the trial. Thus, defense counsel was aware that the only court in which the witness could have been convicted of anything was the juvenile court. A conviction is a disposition and hence barred by the statute.

The majority cites *People* v. *Smallwood* (1943), 306 Mich 49 as authority for their decision, but *Smallwood* is clearly distinguishable. In *Smallwood* the question asked was,

"Now, Cathleen, you have been in trouble with the juvenile authorities before?"

The Supreme Court stated (p 54):

"While we agree with the judge that the juvenile records are not admissible, the question asked did not refer to the 'disposition of the child' or any evidence given in the case. The question as framed was proper and it should not have been excluded."

In the instant case the question asked did refer to the disposition of the child. I agree with the dissent of Chief Justice Boyles who said (pp 57, 58):

"A reading of Mr. Justice Butzel's entire opinion leads to a fair inference that the real reason therein for reversal and granting a new trial is because the conviction was against the great weight of the evidence and that the motion for new trial should have been granted."

Further, I agree with our Court when it said in *People* v. *Luther* (1969), 20 Mich App 42, 47:

"While *Smallwood* remains good law *in its factual context,* we do not choose to extend it to include

blanket coverage of a defendant's testimony for impeachment purposes." (Emphasis added.)

The decision of the majority will prohibit the use of a juvenile's record when he is a party litigant, but will allow it when he is a witness. When faced with this question many years ago, under a similar statute, the Louisiana Supreme Court in *State* v. *Kelly* (1930), 169 La 753, 757 (126 So 49, 51) said:

"It would be strange, indeed, if the law made the proceedings had in the juvenile court, or the sentence to the Louisiana Training Institute, inadmissible against the once juvenile offender, whenever thereafter he took the witness stand in a case to which he was a party litigant, but permitted them to be admitted, to affect his credibility, in all cases in which he was not a party litigant. This, indeed, would be arbitrary legislation.

"Section 8 of the act of 1926, in our opinion, contemplates that an inquiry, to show one's record as a juvenile offender, to affect his credibility as a witness, whether he be a party to the litigation or not, is a 'proceeding affecting such person.'"

I have read the entire instructions of the trial court and believe that the judge fairly and accurately instructed on the law. Defendant having made no objections to the instructions at the trial cannot now raise them on appeal.

I would affirm.