PEOPLE v. BASEMORE

1. Criminal Law—Use of Defendant's Nickname—Relevancy.

Prosecutor's referring to the defendant's nickname, "Wolf", was not improper where defendant had the same nickname for many years and the nickname was relevant to the case in that some of the witnesses stated that the murderer, when seeking entrance to the victim's house, said his name was "Wolf".

2. Criminal Law—Witness's Statement—Loss of Statement.

Loss of statements given by witnesses, shortly after the crime with which the defendant was charged was committed, that one of the murderers, when entering the victim's house had said his name was "Wolf" did not entitle the defendant, nick-named "Wolf", to have the prosecution suppressed where there was no claim that the statements were deliberately lost and the defense brought out at trial that some of the witnesses had said the name given was "Walt".

3. Criminal Law — Evidence — Defendant's Prior Conviction — Character Witness.

Prosecutor's asking a witness, who testified concerning the defendant's good reputation and character, whether he was aware that the defendant had been convicted of an offense while in the army was not error where the defendant had already testified concerning his army conviction.

4. Criminal Law—Defendant Testifying—Ownership of Gun— Preserving Question.

Prosecutor's asking the defendant, charged with murder, if he had ever owned a gun did not constitute reversible error

References for Points in Headnotes

[1] 53 Am Jur, Trial § 459.
[2] 21 Am Jur 2d, Criminal Law §§ 218, 225, 333.
[3] 58 Am Jur, Witnesses § 734 et seq.
[4] 58 Am Jur, Witnesses § 649.
[5, 6] 58 Am Jur, Witnesses § 736.

where defendant's lawyer objected and, after an off-the-record conference in the absence of the jury, the defendant's lawyer was satisfied to let the matter drop, the lawyer and defense counsel did not ask for a cautionary instruction, did not attempt to develop the facts regarding defendant's ownership of a gun, if he did own one, and defense counsel did not claim that irreparable damage had been done to the defendant's case or ask for a mistrial.

5. WITNESSES—JUVENILE RECORD—IMPEACHMENT.

A person's history of juvenile offenses may not be used under the statute "against" him, but it can be used to impeach a witness's credibility when he testifies against someone else (MCLA § 721A.23).

6. WITNESSES—JUVENILE RECORD—IMPEACHMENT.

Refusal to allow defense counsel to place before the jury for impeachment purposes the juvenile records of two prosecution witnesses in a trial for murder was error, where one of the witnesses was the only witness who identified defendant both at a lineup and at trial as one of two assassins, and the other was unable so to identify defendant at the lineup but identified him at trial.

Appeal from Recorder's Court of Detroit, Donald S. Leonard, J. Submitted Division 1 June 9, 1971, at Detroit. (Docket No. 9637.) Decided October 1, 1971.

Robert Basemore was convicted of second-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Richard R. Nelson,* Assistant Prosecuting Attorney, for the people.

*Francis K. Young,* for defendant on appeal.

Before: Levin, P. J., and Quinn and V. J. Brennan, JJ.

Levin, P. J. Some time between 11:30 and midnight on May 27, 1969, two men were admitted to the home occupied by Lulu M. Sailor and Audrey Posey. A few minutes later the women were assassinated by means of repeated revolver shots to the head.

Walter Caddell and defendant-appellant Robert Basemore were bound over on a charge of second-degree murder.[1] After a jury trial Caddell was acquitted and Basemore was convicted.

The people's case was based on the testimony of five teen-age boys between the ages of 15 and 17 who were sitting on the porch of the house adjacent to the Posey house when the two assassins appeared at the door of the Posey house and asked to be admitted.

The boys testified that Audrey Posey answered the door asking, "Who is it?" The response was either "Wolf" or "Walt". Four of the boys testified on direct examination that the response was "Wolf". On cross-examination, two admitted that it might have been "Walt". A policeman testified that the account he was given shortly after the crime was committed included the name "Walt".

Statements were taken from the youthful witnesses shortly after the crime was committed but they were lost before the trial. Resumés of the statements, on the basis of which the prosecutor recommended issuance of warrants, were found and made available to defense counsel during the trial. It appears from the resumés that in their initial

---

[1] MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

statements to the police some of the boys said that the response at the front door was "Walt".

The police were called and shortly thereafter they arrested Orlando Lewis and *Walt*er Harvard at the Playmore Bar.

Lewis lived in a flat above the one where the murders were committed. Harvard was the proprietor of the Playmore. Lulu Sailor worked at the Playmore and Audrey Posey was a frequenter of the bar. Basemore was a friend of Harvard and also a frequenter of the bar.

Lewis and *Walt*er Harvard were later released and it was then that *Walt*er Caddell and Robert Basemore were arrested and charged. Basemore was known by the nickname of "Wolf".

There were two lineups. Basemore was in one lineup and Caddell in the other.

At the trial three of the boys, Zachary Baldwin, Michael Harris, and Garfield Hawkins, identified Basemore as one of the men who entered the Posey home. Kenneth Richardson and Terrance Stovall were unable to identify him. All the boys except Richardson attended the Basemore lineup. A police officer testified that Baldwin identified Basemore in the lineup, that Harris and Hawkins (who identified Basemore at the trial) could not identify him in the lineup, and that Stovall (who could not identify Basemore at the trial) was uncertain at the lineup.

In summary, the only witness who identified Basemore both at the lineup and at the trial was Baldwin. Baldwin also identified an innocent person (a man named Reed) who was in the Basemore lineup. Walter Harvard testified at the trial that Baldwin pointed him out shortly after the shooting and said, "That's the one". On direct examination Baldwin

said the response at the door was "Wolf" but concluded his testimony with the statement that he was positive that it was "Walt".

The evidence tended to show that the boys were about 25 to 35 feet from the entrance to the Posey flat. Hawkins, who could not identify Basemore at the lineup but who identified him at the trial, said that the porch light was on. Richardson, who could not identify Basemore, said the porch light was not on.

The boys had been drinking beer and wine shortly before they witnessed the murderers' arrival.

There is no merit in Basemore's claim that the prosecutor's use of the nickname "Wolf" was improper. "Wolf" had been Basemore's nickname since he was 13 or 14 years of age. The name "Wolf" was relevant in these proceedings. The testimony of the teen-agers was that one of the assassins had identified himself as "Walt" or "Wolf". There were two Walts, Walter Caddell, the codefendant who was acquitted, and Walter Harvard, the proprietor of the Playmore Bar, who was arrested shortly after the crime was committed and who was pointed out by Baldwin at the police station but who was later released. The defendant's claim that the prosecutor used the term in a derogatory or abusive manner is not supported by an examination of the record.

The loss of the witnesses' statements does not entitle Basemore to a suppression of the prosecution. He makes no claim that the statements were deliberately lost or destroyed. The defense brought out at the trial the fact that at the time the teenagers gave their statements some of them said that the response at the door was "Walt".[2]

---

[2] The judge required that a further effort be made to locate the statements during the trial, but they could not be found. It was

The prosecutor asked a witness who testified concerning Basemore's good reputation and character whether he was aware that Basemore had been convicted of the offense of larceny while he was in the army. The witness responded that he was aware of the conviction. The great weight of authority appears to support the view that a character witness may be cross-examined regarding his knowledge of specific acts or crimes attributed to the defendant.[3] We need not associate ourselves with those decisions in order to decide this case. Here it could not be claimed that the question put to the character witness placed before the jury evidence otherwise inadmissible; Basemore had already testified concerning his army conviction of the offense of larceny. There was no error.

The prosecutor also asked the character witness whether he had ever been arrested and convicted of a crime and repeated this inquiry after the witness had already responded once in the negative:

"*Q.* Have you ever been arrested and convicted of a crime?
"*A.* No.
"*Q.* You have never been arrested and convicted of a crime?"

Defense counsel objected and the question was not then pursued. However, later the following occurred:

"*Q.* You testified that you have never been arrested and convicted of a crime, is that correct?

---

then that defense counsel were furnished with the resumés of the statements upon the basis of which the warrants were recommended. It was agreed that the resumés could be used in cross-examining the witnesses.

[3] 58 Am Jur, Witnesses, § 657, p 362; Anno: Cross-examination of character witness for accused with reference to particular acts or crimes, 47 ALR2d 1258. But see *People* v. *Hill* (1932), 258 Mich 79, 83–87.

"*A.* That's right.
"*Q.* Do you recall August 16, 1958?
"*A.* No, I don't.
"*Q.* You don't recall that date?
"*A.* No, I do not recall that date.
"*Q.* Do you recall ever being arrested and convicted—"

The jury was excused and there was an off-the-record conference and the matter was not pursued. Without more we have no basis for concluding that the prosecutor sought by innuendo to put before the jury inadmissible evidence or a fact that he was not prepared to prove.

Toward the conclusion of the cross-examination of Basemore, he was asked:

"*Q.* Have you ever owned a gun?"

His lawyer objected. The jury was excused, there was an off-the-record conference, and the matter was not further pursued.

While the mere asking of a question can carry with it a damaging innuendo, it appears that Basemore's lawyer was satisfied to let the matter drop. He did not ask for a cautionary instruction. He did not attempt to develop the facts regarding Basemore's ownership of a gun, if he did own one. He did not claim that irreparable damage had been done to Basemore's case or ask for a mistrial.

Shortly before this appeal was argued, we held in *People* v. *Davies* (1971), 34 Mich App 19, *leave to appeal denied* July 21, 1971, 385 Mich 773, that while a person's history of juvenile offenses may not, under the statute, be used "against" him,[4] it is reversible error to prevent use of a witness's juve-

---

[4] MCLA § 712A.23 (Stat Ann 1962 Rev § 27.3178[598.23]).

nile record to impeach his credibility when he testifies against someone else.

In this case, the trial court refused to allow defense counsel to place before the jury the juvenile records of Baldwin and Hawkins. It will be recalled that Baldwin was the only witness who identified Basemore both at the lineup and at the trial, and that Hawkins was one of the two boys who was unable to identify Basemore in the lineup but who identified him at the trial.

Basemore is entitled on this direct appeal of his conviction of second-degree murder to the benefit of the rule stated in *Davies*.[5]

Reversed and remanded for a new trial.

All concurred.

---

[5] *People* v. *Hampton* (1971), 384 Mich 669; *People* v. *Townsend* (1970), 25 Mich App 357, 361; *People* v. *Nichols* (On Rehearing, 1971), 33 Mich App 83.