## PEOPLE v GLOVER

1. Criminal Law—New Trial—Witnesses—Juvenile Record—Cross-Examination—Impeachment.

A miscarriage of justice resulted and a new trial must be ordered, although there was no objection, where a trial court would not allow defense counsel on cross-examination to use a witness's juvenile record to impeach the credibility of the witness; testimony bearing upon a witness's credibility is essential to the trier of fact in ascertaining the truthfulness of the witness and consequently becomes indispensable for a fair trial.

2. Witnesses—Examination—Discretion.

The scope of examination of witnesses rests within the sound discretion of the trial court and the trial court's decision will not be overturned on appeal unless there is a clear abuse of that discretion.

3. Criminal Law—Witnesses—Bias—Agreement with Prosecution.

Prosecutorial leniency, immunity, or agreements regarding the testimony of a witness materially affect the bias or interest of a witness and should be placed before the trier of fact in a criminal case.

4. Criminal Law—Cross-Examination—Witnesses—Bias—Juvenile Witness—Agreement with Prosecution.

A trial court did not commit reversible error in failing to permit defense counsel on cross-examination of the prosecutor to ask questions concerning the reasons why no waiver was sought by the prosecutor to try a juvenile who was defendant's accomplice in a robbery where the court did allow defense counsel to ascertain if in fact any bargain was struck with the juvenile witness in exchange for his testimony, and thus defense counsel was not foreclosed from showing bias or interest on the part of the witness.

References for Points in Headnotes

[1, 4] 58 Am Jur, Witnesses § 725 *et seq.*

[2] 58 Am Jur, Witnesses § 555.

[3] 58 Am Jur, Witnesses § 866.

Appeal from Muskegon, Charles A. Larnard, J. Submitted Division 3 April 4, 1973, at Grand Rapids. (Docket No. 14410.) Decided May 24, 1973.

John Glover was convicted of armed robbery. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Paul M. Ladas,* Prosecuting Attorney, and *James P. Piper,* Assistant Prosecuting Attorney, for the people.

*Balgooyen, Daniels & Balgooyen, P. C.,* for defendant on appeal.

Before: HOLBROOK, P. J., and T. M. BURNS and CHURCHILL,* JJ.

T. M. BURNS, J. On the evening of December 7, 1971, an armed masked gunman robbed a grocery store in Muskegon Heights, Michigan. The defendant, another adult, and a 16-year-old juvenile were arrested for the crime. In a jury trial held on February 29, 1972, defendant was convicted of armed robbery. MCLA 750.529; MSA 28.797. He was sentenced to a term of from 7 to 15 years imprisonment and appeals as of right. Defendant raises two issues which will be discussed and decided in the manner presented below.

I

The prosecution's chief witness at trial was the 16-year-old juvenile. He testified that he had perpetrated the robbery, he and the defendant had planned and discussed the crime, the defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

selected the business establishment to be robbed, the defendant gave him a gun to use while en route to the robbery, and that he and the defendant split the proceeds of the robbery.

On cross-examination the witness stated that he had not been offered any leniency, immunity, or favorable treatment in exchange for the testimony against the defendant. Defense counsel then asked the juvenile if he had been convicted of any prior armed robberies. The witness replied in the affirmative. However at this point the trial court interrupted and instructed the jury to strike the question and answer from their minds and not to consider it in their deliberations. Defense counsel continued the questioning and asked the juvenile if he had been charged with the present robbery. The assistant prosecutor objected. The trial court excused the jury, declared a 15-minute recess, and directed defense counsel and the prosecutor to research the question of whether or not a juvenile record could be utilized to impeach the credibility of a witness. After the recess the trial court, defense counsel, and the prosecutor all relying on *People v Warren,* 23 Mich App 20 (1970) and *People v Smallwood,* 306 Mich 49 (1943), agreed that the use of juvenile records for impeachment purposes was not permissible. Upon resumption of the trial, the court instructed the jury not to consider any of the testimony having to do with the youthful witness's difficulties in juvenile court.

Although there was no objection, defendant asserts that the trial court reversibly erred by ruling that a witness could not be impeached via a juvenile record. Inasmuch as defense counsel failed to object, our review is limited to ascertaining whether or not a miscarriage of justice resulted. *People v Mitten,* 44 Mich App 64 (1972).

Testimony bearing upon a witness's credibility is essential to the trier of fact in ascertaining the truthfulness of the witness and consequently becomes indispensable for a fair trial. As we observed in *People v Downs,* 45 Mich App 130, 131–132 (1973):

"The axiom 'What you are speaks louder than what you say', embodies a folk wisdom more venerable than our historically recent common law of evidence. So, Socrates observed that 'a man is as his deeds'. Accordingly, by this commonsense bit of common law, we recognize the peril of accepting without scrutiny the portrait of the witness, drawn in the most favorable image by the art of sponsoring counsel and the witness's own self-esteem. The genuineness of the image, or at least its completeness, must be challenged. The trier of fact should be made to know the capacity of the witness to make an observation, to remember a past event accurately, to be fair, and to be truthful. Bearing on the latter, it has been thought that the character of the witness as evidenced by his respect for law and the rights of others was a relevant area for cross-examination."

In the case at bar the witness sought to be impeached was the prosecutor's key witness without whose testimony the defendant could not have been convicted. The record reflects that this witness had a juvenile record. The law at the time of defendant's trial clearly permitted the use of a juvenile record for the impeachment of a witness who, as here, was not himself a defendant. *People v Davies,* 34 Mich App 19 (1971); *People v Basemore,* 36 Mich App 256 (1971). *Davies* and *Basemore* were printed in the advance sheets approximately three months and two weeks respectively before the start of defendant's trial. These cases represented a shift in the law, and we do not deem either the prosecutor or the defense counsel negli-

gent in failing to discover them within the 15 minutes allocated to research the impeachment question. However, the trial court was bound to follow the law notwithstanding the fact that it was not called to the court's attention.

The people argue that the jury was given an adequate opportunity to consider the juvenile record of the witness. This argument is specious. The trial court specifically instructed the jury to ignore any references to the witness's juvenile record. We presume that the jury followed the court's instruction in this regard, as in all others. Therefore the witness's testimony, insofar as his juvenile record was concerned, remained unimpeached. Accordingly, we conclude since the witness had a juvenile record and was subject to impeachment thereon, and inasmuch as the trial court erroneously prohibited such impeachment of a key witness, a miscarriage of justice resulted and a new trial must be ordered.

II

Defense counsel in an attempt to show alleged bias or interest in the outcome of the case on the part of the juvenile witness, called the Muskegon County Prosecutor to the stand and inquired into the reasons the prosecutor had not petitioned to have the juvenile waived over to circuit court on a charge of armed robbery. However once again the trial court interrupted, excused the jury, opined that defense counsel was attempting to improperly impeach the juvenile witness by collateral evidence and ruled that defense counsel could ask no further questions concerning the prosecution's reasons for not seeking the waiver, but could ask if in fact a bargain was negotiated with the juvenile in return for his testimony. The jury was recalled

and the prosecutor testified that he had no intention of charging the juvenile with the armed robbery and he had never so intended. From this defendant contends that the trial court reversibly erred by effectively preventing any inquiry into whether the juvenile witness was interested or biased in the outcome of the case as a result of favored treatment, leniency or immunity.

It is fundamental that the scope of examination of witnesses rests within the sound discretion of the trial court, and the trial court's decision will not be overturned on appeal unless there is a clear abuse of that discretion. See generally 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 592, pp 769, 770. We find no such abuse here.

Prosecutorial leniency, immunity, or agreements regarding the testimony of a witness materially affect the bias or interest of a witness and should be placed before the trier of fact. *People v Evans,* 30 Mich App 361 (1971). Here, although the trial court did not permit questions concerning the reasons why no waiver was sought the trial court did allow defense counsel to ascertain if in fact any bargain was struck with the juvenile witness in exchange for his testimony. Therefore defense counsel was not foreclosed from showing bias or interest on the part of the witness. Accordingly, we find no error.

For the reasons delineated in Section I, defendant's conviction is reversed and the case is remanded for retrial.

All concurred.