PEOPLE v POINDEXTER

PEOPLE v FORT

Docket Nos. 72838, 73311. Submitted August 14, 1984, at Detroit.—
Decided October 15, 1984.

Daniel Poindexter and Ronnie Fort were convicted in a joint jury
trial of extortion, Recorder's Court of Detroit, Michael F. Sa-
pala, J. In addition, defendant Fort was convicted of felony-
firearm. Defendants appealed, and the Court of Appeals consoli-
dated the appeals. Both defendants allege that they were
denied their right to confrontation by the trial court's ruling
that they could not impeach the testimony of the victim with
evidence of his prior juvenile record. Defendant Fort alleges
that the trial court should have granted his motion for a
directed verdict on the felony-firearm charge, that the court
erred in not conducting a hearing regarding the victim's use of
aliases, and that his waiver of production of certain witnesses
was not done knowingly. *Held:*

1. Evidence of juvenile adjudications is generally not admissi-
ble. However, such evidence may be admitted in attacking the
credibility of a witness other than the accused if a conviction of
the juvenile's offense would be admissible to impeach an adult
and if the court determines that admission of the evidence is
necessary for a fair determination of the issue of the accused's
guilt or innocence.

2. The trial court, in deciding whether to admit evidence of a
witness's juvenile record, should consider the role of the wit-
ness in the trial and the nature of the juvenile record. In this
case, the testimony of the victim was not essential to the
conviction of the defendants.

3. Only one item on the victim's juvenile record could have
been used to impeach his testimony. The trial court's refusal to

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 81 Am Jur 2d, Witnesses § 575.
    Use of judgment in prior juvenile court proceeding to impeach
    credibility of witness. 63 ALR3d 1112.
[4] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 348, 349.
    81 Am Jur 2d, Witnesses §§ 569, 571.
[5] 31 Am Jur 2d, Extortion, Blackmail, and Threats §§ 1, 8.
[6] 79 Am Jur 2d, Weapons and Firearms § 1.

allow such impeachment was an abuse of discretion. The error was harmless, however, because of the age of the offense and the nonessential character of the victim's testimony.

4. Defendant Fort's allegation regarding the victim's use of aliases was not preserved for appeal.

5. The crime of extortion is complete when the threat is made. However, in this case, when the defendants arrived at the victim's home to collect the money they were involved in a continuous transaction that began with the threat. Defendant Fort's possession of a firearm thus occurred during the commission of the felony.

6. There was no error in regard to the waiver of production of certain witnesses.

7. Operability of the firearm is not an element of the offense of felony-firearm.

Affirmed.

1. Criminal Law — Witnesses — Impeachment — Juvenile Record.

Generally, a person's juvenile court record is inadmissible for purposes of impeachment of that person; however, evidence of a juvenile adjudication of a witness other than the accused may be admitted for impeachment of the witness if the conviction would be admissible to attack the credibility of an adult and if admission of the evidence is necessary for a fair determination of the issue of guilt or innocence of the accused (MCL 712A.23; MSA 27.3178[598.23], MRE 698[d]).

2. Criminal Law — Witnesses — Impeachment — Juvenile Record.

A trial court, in deciding whether to admit evidence of a witness's juvenile court record for impeachment purposes, must consider first the role of the witness in the trial, that is, how essential the witness's testimony is to the outcome of the case, and, second, the nature of the juvenile record, that is, what conduct was involved and the length of time which has elapsed since.

3. Criminal Law — Witnesses — Impeachment — Juvenile Record.

Neither evidence of a charge which did not result in a conviction nor evidence of a witness's former status as a youthful trainee under the Holmes Youthful Trainee Act are admissible for purposes of attacking the credibility of the witness.

4. Criminal Law — Unlawfully Driving Away Automobiles — Intent — Witnesses — Impeachment.

Intent to steal is not an element of the crime of unlawfully

driving away an automobile; however, because the crime is a felony, use of evidence of a witness's conviction of that crime for impeachment purposes is within the discretion of the trial court (MCL 750.413; MSA 28.645, MRE 609).

5. EXTORTION — ELEMENTS OF OFFENSE — OVERT ACT.

The elements of extortion are (1) a communication, (2) theatening accusation of a crime or injury to the person or property or mother, father, husband, wife, or child of another, (3) with intent thereby to extort money or pecuniary advantage as to compel the person threatened to do or refrain from doing an act against his will; the statute does not require an overt act to carry out the threat, and the crime is complete before any money is handed over (MCL 750.213; MSA 28.410).

6. CRIMINAL LAW — FELONY-FIREARM — OPERABILITY OF FIREARM.

Operability of a firearm is not an element of the offense of felony-firearm (MCL 750.227b; MSA 28.424[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Frank J. Bernacki,* Assistant Prosecuting Attorney (in Poindexter), and *Jeffrey Caminsky,* Assistant Prosecuting Attorney (in Fort), for the people.

*Robert E. Slameka,* for defendant Poindexter.

*Rose Mary C. Robinson,* for defendant Fort.

Before: T. M. BURNS, P.J., and M. J. KELLY and N. J. KAUFMAN,* JJ.

N. J. KAUFMAN, J. Defendants were convicted by jury of extortion, MCL 750.213; MSA 28.410, and were each sentenced to 5 to 20 years imprisonment. Defendant Fort was also convicted of felony-firearm, MCL 750.227b; MSA 28.424(2). Both defendants appeal as of right.

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

Eric Pasha testified that while at an arcade he overheard defendants discussing a plan to snatch his sister Crystal's purse and jewelry. As defendants approached Crystal, Eric grabbed defendant Fort and a fight ensued, during which defendant Fort was thrown through a window. A couple of weeks later, both defendants appeared at the Pasha residence and asked Eric's mother for $200 reimbursement to pay for the broken window. Mrs. Pasha testified that she told them she would pay half the bill if they showed her a receipt. Two or three days later, defendants telephoned the Pasha residence inquiring about the $200. When reminded of the receipt, one reportedly responded, "It's alright and I'll be around to get my money though."

Defendants continued to phone the Pasha residence demanding the $200. Finally on November 17, they told Mrs. Pasha, "We're coming to get our money and we're going to get our money today. We're coming nine-strong." Mrs. Pasha immediately phoned the police, who arrived in time to hear another phone call from defendants, demanding money. Eric, as instructed by the police, told defendants to come and get the money. When defendants arrived 40 minutes later, Eric gave them a package supposedly containing money; as soon as defendant Poindexter received it, the police interceded. After a struggle, the police arrested the defendants. Defendant Fort was found to be carrying a .22-caliber revolver in his jacket pocket.

Defendants first argue that they were denied their right to confrontation by the trial court's ruling that they could not impeach Eric Pasha with his prior juvenile record. The United States Supreme Court has ruled that the Sixth Amendment right to confrontation is paramount to the

state's policy of protecting a juvenile offender, and any temporary embarrassment to the witness or his family resulting from the disclosure of his juvenile record is outweighed by a defendant's right to cross-examine witnesses effectively for possible bias. *Davis v Alaska,* 415 US 308, 319; 94 S Ct 1105; 39 L Ed 2d 347 (1974).

Michigan has a statute similar to the juvenile protection statute at issue in *Davis v Alaska.* Michigan's statute reads:

"A disposition of any child under this chapter, or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter." MCL 712A.23; MSA 27.3178(598.23).

The purpose of the statute is to hide youthful errors from the full glare of the public by preventing a juvenile court conviction from subsequently discrediting the individual due to childhood actions. *People v Pennington,* 113 Mich App 688, 697; 318 NW2d 542 (1982), citing *People v Smallwood,* 306 Mich 49; 10 NW2d 303 (1943). Thus the statute protects not only juveniles, but also adults with juvenile records. Although not revealed in the record, we assume Eric Pasha was no longer a juvenile at the time of this trial.

Our research has not yielded any Michigan cases discussing this statute's applicability to an impeachment by use of a juvenile record since *Davis v Alaska* was handed down. Earlier cases upheld impeachment of witnesses by cross-examination as to juvenile records, based on the holding in *People v Smallwood, supra,* that where the word of one person against another is determinative, all facts pertaining to the credibility of the principal

witness should be brought out. In *People v Davies,* 34 Mich App 19; 190 NW2d 694 (1971), this Court expanded *Smallwood* to cases other than sexual offenses, reasoning that where the people's case turns on the credibility of a juvenile witness, there is no sound reason for excluding the history of juvenile offenses in a case not against that juvenile offender but against someone else whose liberty is at stake. Subsequent cases relied on *Davies* to reverse convictions of defendants who were not allowed to impeach key prosecution witnesses with their juvenile records. *People v Basemore,* 36 Mich App 256; 193 NW2d 335 (1971), *People v Yacks,* 38 Mich App 437; 196 NW2d 827 (1972), *People v Meadows,* 46 Mich App 741; 208 NW2d 593 (1973), *People v Glover,* 47 Mich App 454; 209 NW2d 533 (1973).

Michigan case law appears to be contrary to the general rule in other jurisdictions that a witness may not be impeached by use of the witness's juvenile court record. See Anno: *Use of Judgment in Prior Juvenile Court Proceeding to Impeach Credibility of Witness,* 63 ALR3d 1112, §§ 3, 4, pp 1120-1124.

But then in 1978, Michigan adopted MRE 609(d), identical to FRE 609(d), which reads:

"Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence."

This rule is broader than the statute but narrower than previous decisions. It has been relied on to prevent use of prior juvenile adjudications to im-

peach the credibility of a juvenile defendant. See *In the Matter of Clabe Hunt,* 407 Mich 918 (1979).

In *People v Hawkins,* 58 Mich App 69; 226 NW2d 851 (1975), this Court emphasized that the *Smallwood* line of case did not go so far as to strip the statutory protection from every witness, nor did these cases limit the trial judge's discretion to control the scope of cross-examination of witnesses.

"Thus, the cases have all involved facts similar to *Smallwood,* allowing impeachment of a complainant in a one-against-one cases, or were cases in which the witness was described as a 'key witness' or as being a chief witness, indispensable, or otherwise crucial to the case. None of the cases involve a discussion of the duties of the trial judge in exercising his discretion, but we think it implicit in all of them that *there is such a discretion which,* in criminal cases, *is to be exercised in favor of impeaching cross-examination, notwithstanding the protective statute, where the credibility of an accusatory witness is essential to conviction.*

"We think it equally clear that in other situations, the trial judge is required to weigh the policy considerations of the statute against the need to attack credibility in the light of all of the circumstances of the case. *The preliminary question addressed to the trial judge will be dual in nature, going both to the role of the witness in the trial and to the nature of the juvenile record of the witness.* As to the first, the kind of testimony elicited from the witness and its purpose, whether it is accusatory, whether it is direct or circumstantial, whether it is corroborative or cumulative and to what degree, whether the witness is hostile or has an interest in the outcome of the case, are among the factors to be considered. As to the juvenile record, the court should consider not only what conduct was involved, but also the period of time which has since elapsed." 58 Mich App 74-75. (Footnotes omitted.) (Emphasis added.)

*Hawkins* was decided prior to *Davis v Alaska,*

and does not consider the constitutional right to confrontation. However, its instruction that courts evaluate the role of the witness's testimony foreshadowed the analysis used in some post-*Davis* cases reviewing a trial court's decision to prohibit impeachment of a prosecution witness by use of juvenile adjudications. In *Gonzales v State,* 521 P2d 512 (Alas, 1974), *cert den* 419 US 868; 95 S Ct 125; 42 L Ed 2d 106 (1974), the court affirmed the trial court's refusal to permit inquiry into prior juvenile adjudications, distinguishing the case from *Davis* by pointing out that impeachment of general credibility by prior convictions is of considerably less probative value than use of prior convictions to show bias, which was the case in *Davis.* The trial court's refusal was similarly upheld in *People v Holsey,* 30 Ill App 3d 716; 332 NE2d 699 (1975), because the minor was not the only witness to the crime, and other testimony greatly diminished the importance of the minor's testimony. The court stressed the continued vitality of the discretion of trial courts, reading *Davis* as requiring a balance of the importance of the youthful witness's testimony against the state's policy of preserving the anonymity of juvenile offenders.

In *People v Bingham,* 75 Ill App 3d 418; 31 Ill Dec 228; 394 NE2d 430 (1979), the court found it to be harmless error for the trial court to have excluded use of juvenile adjudications for impeachment purposes because the witness's testimony was not crucial, since the state offered other witnesses whose testimony was substantially similar to that of the witness-victim's.

Drawing a line between general attacks on credibility and exposing possible bias, prejudice or other motives of the witness was also upheld in *State v Tolliver,* 562 SW2d 714 (Mo App, 1978), the court approving a protective order which prohib-

ited use of the witness's juvenile offense record for general impeachment but allowed use of the record to expose bias. Courts have also simply ruled that juvenile adjudications do not constitute convictions so are not within the rules of evidence permitting impeachment by use of prior convictions. *Pallett v State,* 269 Ind 396; 381 NE2d 452 (1978), *State v Burr,* 18 Ore App 494; 525 P2d 1067 (1974).

In the case before us, defendants do not argue that Eric Pasha's juvenile record might have revealed his bias, so, unlike in *Davis,* the record would have been used only as an attack on his general credibility. Defendants do consider him a key witness, urging that he was the only witness who established that defendant Fort made threats on the telephone. However, Eric's mother, father and sister all testified to having heard threats over the phone; the police did as well. They all heard Eric tell the callers to come over to get the money, and saw defendants appear at their door 40 minutes later. We do not find Eric Pasha's testimony to have been essential to conviction.

Following the approach suggested by *Hawkins, supra,* we next look at Eric Pasha's juvenile record. As the larceny charge did not result in a conviction, it would not be admissible to attack the credibility of Eric if he were an adult, and so it was properly excluded. MRE 609(d). Similarly, Eric Pasha's status as youthful trainee under the Holmes Youthful Trainee Act is not a conviction, MCL 762.14; MSA 28.853(14), and may not be used for impeachment purposes. *People v Crutchfield,* 62 Mich App 149; 233 NW2d 507 (1975), *lv den* 395 Mich 758 (1975).

The only item on Eric Pasha's juvenile record that could have been used to impeach him was a 1977 conviction for unlawfully driving away an

automobile, MCL 750.413; MSA 28.645. That conviction was six years old at the time of this trial. The trial court ruled that, since intent to steal is not a necessary element of this crime, it is not a theft crime which could be used to impeach. The trial court was correct in ruling that intent to steal is not an element of the crime. *People v Davis,* 36 Mich App 164; 193 NW2d 393 (1971). However, this Court has held that, because it is a felony, its use for impeachment purposes is within the discretion of the trial court under MRE 609. *People v Bernard Smith,* 81 Mich App 561, 569; 266 NW2d 40 (1978), *rev'd on other grounds* 406 Mich 926 (1979). As the *Davis* decision confirmed prior Michigan case law permitting impeachment by the use of juvenile offenses, we conclude that the trial court abused its discretion in refusing to permit impeachment with this juvenile conviction. However, considering the age of this conviction and our determination that Eric Pasha's testimony was not crucial at trial, the error was harmless— we do not think any reasonable juror would have voted differently had they known of Eric Pasha's juvenile record.

Defendant Fort's contention that the trial court erred by not conducting a hearing regarding Eric Pasha's use of aliases has not been preserved for appeal, as it was only defendant Poindexter's counsel who objected below, and he has not raised this issue on appeal. *People v Diaz,* 98 Mich App 675; 296 NW2d 337 (1980).

Defendant Fort argues that the trial court should have granted his motion for directed verdict on the felony-firearm charge against him, as the underlying felony, extortion, is complete at the time of the threat.

The elements of extortion are:

"1) a communication, 2) threatening accusation of any crime or offense or any injury to the person or property or mother, father, husband, wife, or child of another, 3) with intent thereby to extort money or pecuniary advantage as to compel the person so threatened to do or refrain from doing an act against his will." *People v Krist,* 97 Mich App 669, 675; 296 NW2d 139 (1980), *lv den* 409 Mich 936 (1980).

The statute does not require an overt act to carry out the threat. *People v Bruno,* 30 Mich App 375, 383; 186 NW2d 339 (1971). The crime is complete before the money is handed over. *People v Percin,* 330 Mich 94, 101; 47 NW2d 29 (1951). But receipt of the money is certainly evidence of the extortionist's intent. A person who has a firearm in his possession at the time he commits a felony is guilty under the felony-firearm statute. MCL 750.227b; MSA 28.424(2). This Court has upheld felony-murder convictions where the murder was committed after the felony but was part of a continuous transaction or connected with the underlying felony. *People v Smith,* 55 Mich App 184; 222 NW2d 172 (1974), *aff'd in part* 396 Mich 825; 238 NW2d 536 (1976), *People v Goddard,* 135 Mich App 128; 352 NW2d 367 (1984). Defendant Fort appeared at Eric Pasha's door just 40 minutes after threatening him on the phone. We conclude that it was a continuous transaction, carrying through on his threats, and satisfied the felony-firearm statute.

Defendant Fort also argues that his waiver of the production of certain witnesses was not done knowingly because he was not advised of his constitutional right to confront witnesses. Defendant did not cite any cases for this proposition, nor do we find any. The record indicates that the trial court specifically asked defendant whether he

agreed with his attorney's decision to waive production of the witnesses, and each time defendant answered affirmatively. We find no error.

Finally, defendant Fort argues that his felony-firearm conviction is infirm because operability of the firearm, an essential element, was never proven. Defendant is mistaken—operability is not, and never has been, an element of felony-firearm, as repeated most recently by this Court in *People v Brooks,* 135 Mich App 193; 353 NW2d 118 (1984); see also *People v Broach,* 126 Mich App 711; 337 NW2d 642 (1983), and cases cited therein. These holdings are not, as defendant argues, contrary to *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979). See *People v Pierce,* 119 Mich App 780, 782; 327 NW2d 359 (1982).

Affirmed.