439 So.2d 1271 (1983)
Eugene SANDERS
v.
STATE of Mississippi.
No. 54352.
Supreme Court of Mississippi.
November 2, 1983.
*1272 Charles Victor McTeer, Willie Griffin, McTeer & Bailey, Greenville, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BOWLING and ROBERTSON, JJ.
BOWLING, Justice, for the Court:
Appellant Eugene Sanders was convicted in the Circuit Court of the Second Judicial District of Bolivar County for the sale of 33.6 grams of marijuana. As he had prior convictions for that offense, he was sentenced under Mississippi Code Annotated, Section 41-29-147 (1972), to serve a term of forty years under the supervision of the Mississippi Department of Corrections and ordered to pay a fine of $20,000. On appeal, appellant propounds the following assignments of error, to-wit:
I. EUGENE SANDERS WAS DENIED A FAIR TRIAL UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION INSOFAR *1273 AS HIS CONVICTION WAS GAINED AS A RESULT OF THE PERJURED TESTIMONY OF NELSON BASS.
II. EUGENE SANDERS WAS DENIED HIS RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND THE TRIAL COURT ERRED TO THE PREJUDICE OF SAID EUGENE SANDERS BY ALLOWING THE PROSECUTION TO TRY THIS CAUSE IN THE NATURE OF A CONSPIRACY WITHOUT ALLEGING CONSPIRACY IN THE INDICTMENT.
III. THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL ON GROUNDS THE STATE'S FAILURE TO DISCLOSE THE PRIOR CRIMINAL RECORD OF ITS MATERIAL WITNESS, NELSON BASS, VIOLATED THE DUE PROCESS RIGHTS OF THE APPELLANT.
IV. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR MISTRIAL ON ACCOUNT OF PREJUDICIAL CONDUCT ON THE PART OF THE PROSECUTING ATTORNEYS IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS.
V. THE TRIAL COURT ERRED IN ADMITTING THE WHITE PAPER TOWELS INTO EVIDENCE IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS.
VI. THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENSE WITNESS BRADLEY HAMILTON TO TESTIFY ABOUT WHAT HE OBSERVED IN APPELLANT'S STORE FROM THE APPROPRIATE LOCATION JAMES WALKER STATED THAT HE OBSERVED THE DRUG TRANSACTION BETWEEN APPELLANT AND NELSON BASS UNDER THE SAME OR SIMILAR CONDITIONS IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS.
VII. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
The evidence introduced by the state was that on the night of December 15, 1981, an undercover agent working with the Bolivar County Sheriff's Department went to the Town of Shaw for the purpose of purchasing contraband from sellers. Admittedly on this night, concentration was made on appellant Sanders. The undercover agent was experienced, having made 23 previous "buys." This agent testified that he went to Shaw in a vehicle furnished by the sheriff's department, after receiving instructions and purchase money from a deputy sheriff who was in charge of such undercover operations. The undercover agent visited several places in Shaw according to his testimony, and went into the Sanders' Food Market, where he saw Sanders, but did not attempt to make a buy personally, as people were there.
Later, sometime between 9 and 10 o'clock p.m., the agent picked up a man named Nelson Bass, who was asked to arrange for the purchase of marijuana by the agent. Bass, according to the agent, instructed the latter to park his car across the street from Sanders' Food Market and he would take the agent's money and secure the marijuana. The agent gave Bass $85 and requested that two ounces be purchased. The agent testified that he had a full and unobstructed view of the Food Market, including the interior. The vehicle was parked approximately 49 steps [measured later] from the market. He saw Bass tap on the door of the market, which was closed with the door locked. Sanders came to the door and let Bass in. There was a short conversation between the two men. Appellant then made a telephone call. Approximately five minutes later, Shirley Williams drove up to the market and parked her car and went inside. She had in her hand a package that appeared to be wrapped in some type of white paper. The agent saw Williams hand this package to Sanders, who in turn handed it to Bass. The latter came back across the street and gave the package to the agent. After leaving Bass, the agent placed his identifying marks on the packages containing what was thought to be marijuana, which bags were enclosed in a *1274 piece of white paper towel. No mark was made on the paper towel. The agent then met again with the deputy sheriff at their rendezvous. The deputy made his mark on the contraband and a tape recording was made of what had occurred. On proper motion, this tape was not submitted to the jury.
The deputy sheriff testified and without repeating the testimony, confirmed that of the agent in regard to the deputy's part of the incident that occurred that night. The state then connected the package of marijuana with that purchased by the undercover agent and identified the marijuana and its quantity as a result of the usual examination at the Mississippi Crime Laboratory.
The state's last witness was Nelson Bass. His testimony was essentially the same as that offered by the undercover agent. He testified he told Sanders he was securing the marijuana for another man who had two girls in Cleveland, who "wanted to get high." Bass testified positively and clearly that after being let into the store, he requested the buy of marijuana from Sanders, who in turn called Williams with whom he had been living for seven years and by whom he had a child. Williams, according to Bass, came to the store the same as related by the undercover agent and brought the marijuana into the store with the bags wrapped in the piece of white paper towel. She gave the package to Sanders, who in turn gave it to Bass in exchange for the money.
Bass testified that on several occasions prior to the time of the trial, Sanders came to him and tried to bribe him not to testify at the trial. Bass testified that Sanders offered him drugs and money while making these requests.
Appellant Sanders took the stand and denied everything including being in the store the night in question. He admitted that he was convicted of the sale of marijuana in 1975 and served a term in the Mississippi State Penitentiary, where he applied himself and became a carpenter.
Sanders testified that he and Shirley Williams have two children. One of whom was by Williams' prior marriage. Sanders further testified that he and his mother constructed the market building but that pursuant to beer licensing requirements, he was not allowed to associate himself with the market as long as it continued to sell beer since he had previously been convicted of a felony. His testimony was that the market was being run by Williams and Sanders' mother.
Williams testified that she and Sanders had been living together for seven years and she was the actual operator of the grocery business and had worked there from 8 a.m. until 9 p.m. the night in question and she then closed and went home to put her child to bed. She testified Sanders was not at the store on the night in question.
Appellant offered a witness who was well qualified as a surveyor and had been such for eighteen years. He testified that he had measured the distance from where the agent's car had been parked in front of the funeral home across the street and that distance from that area to the door of the market was 68 yards and one foot. Appellant tried to develop from this witness that he had parked his car at the same place the agent's car was parked on the night in question at about the same time at night and that he could neither see inside the building nor what was going on around the front door. There was an objection to this testimony and this objection was sustained by the trial court.
The state on redirect offered the deputy sheriff, who previously had testified. This witness stated that around 7:30 or 7:45 p.m. on the night in question, he drove into Shaw and drove down the street in front of Sanders Food Market. He testified that he saw Sanders in the market, but he did not stop for fear of exposing the undercover operation. He reaffirmed the undercover agent's testimony about the two meeting after the buy and exchanging the marijuana.
Under Assignment of Error No. 1, appellant contends that the testimony of *1275 witness Nelson Bass was perjury. The events leading to this contention were as follows: The trial was had on June 7, 1982. Sanders, Williams and Bass had been indicted jointly; however, on Motion of Sanders, there was a severance and he was tried separately. Bass had pled guilty and was awaiting sentencing. On June 15, 1982, appellant filed his petition for appeal. On June 15, 1982, appellant filed his motion for judgment of acquittal notwithstanding the verdict of the jury and motion for new trial, both of which were overruled. On the same date Sanders filed a motion for a hearing in vacation. This motion was also overruled. On July 16, 1982, after the term of court had ended, appellant filed a renewed motion for new trial alleging that on July 1, witness Nelson Bass voluntarily came to appellant's attorney's office in Greenville and gave a tape-recorded statement and affidavit that none of his testimony given at the trial was true. The lower court did not consider the renewed motion as the cause had been appealed and it had lost jurisdiction.
We shall not discuss the facts briefly related above further at this time, as on January 13, 1983, appellant filed in this Court an Application for Leave to File A Petition for Writ of Error Coram Nobis. We shall handle this application at the end of this opinion. It suffices to say now that the lower court clearly had lost jurisdiction of the cause at that time. We therefore are forced to hold that there is no merit to appellant's first assignment of error. Craig v. State, 208 Miss. 528, 44 So.2d 860 (1950).
Appellant contends that the trial court was in error by permitting the state to try the case as a "conspiracy" without stating that word in the indictment. It is clear from the indictment that all three indictees were indicted as principals in the offense. One who aids and abets an offense is indictable as a principal. MCA § 97-1-3 (1972); Anderson v. State, 397 So.2d 81 (Miss. 1981); and Washington v. State, 341 So.2d 663 (Miss. 1977). It is clear from the evidence related above that it was sufficient to convict all three co-indictees as principals in the crime.
Appellant contends that reversible error is present for the reason that the state failed to disclose the prior criminal record of witness Nelson Bass.
The trial judge who presided over the appellant's trial is very wise in having a form order of discovery in criminal cases which covers all those permissible under the circuit court criminal rules. Nowhere in the order or the rules is the state required to automatically disclose in every case the prior criminal record of witnesses.
In the present case appellant contends that his attorney did not learn of a prior record of witness Bass until the jury had retired to consider the verdict.
In the first place, appellant's attorney admits that he talked with Bass prior to trial. Also, he conducted an extensive cross examination of Bass while he was on the stand and it could have been an easy matter for him to ask this adverse and hostile witness about any prior criminal record. This he did not do. Further, in our opinion, we do not believe the production of the prior record of a witness comes under the requirement of producing "any exculpatory information or material concerning defendant," or the requirement that the state furnish "names and addresses of all witnesses in chief proposed to be offered." [Trial Court's Order] We therefore, hold that there was no reversible error under appellant's argument regarding this point.
Appellant contends that the prosecuting attorney took actions during the trial that were prejudicial to appellant and require a reversal of the cause. It is first alleged that the prosecuting attorney in his opening statement indicated that if the appellant made an opening statement, he would have the burden of proving that statement. This indication was made by the prosecuting attorney, but he immediately corrected that statement and advised the jury in plain and unmistakable language that the defendant did not have to prove anything and that the entire burden of *1276 proof was on the state. This eliminated any reversible error.
Appellant alleges as error that the district attorney in his closing argument referred to appellant as a "known dope pusher." Any error was cured when upon objection, the court sustained the objection and clearly instructed the jury to disregard it. Furthermore, it could not have had any adverse effect, as the jury had already heard of appellant's prior conviction for narcotics violations.
The prosecuting attorney referred to a tape-recorded conversation between the undercover agent and the deputy sheriff which, as heretofore pointed out, was not admitted into evidence. On Motion, when this tape was mentioned in the argument, the jury was admonished to disregard any mention of a taped conversation given by the undercover agent.
Appellant contends that the white paper towels that were wrapped around the bags of marijuana were erroneously shown to the jury. Admittedly, the entire quantity of marijuana was in the two plastic bags. The white paper in which they were being carried was not material to that evidence. The bags containing the marijuana were fully and sufficiently marked and identified. No reversible error exists here. The witnesses fully explained the existence of the paper towels during the "buy" of the marijuana.
Appellant alleges reversible error because the trial court refused to permit the expert surveyor to testify as to what he could see at night from across the street to the store. This experiment was made many months after the incident giving rise to the indictment. There was no proof that the conditions were the same or any qualification for admitting such indefinite and speculative testimony. There was no evidence that the circumstances were the same the two nights in question. The exclusion of this speculative testimony was not error. Hines v. State, 339 So.2d 56 (Miss. 1976).
Lastly, appellant alleges that the jury verdict was against the overwhelming weight of the evidence. We carefully have studied the record and briefs in the case and it is sufficient to say without any doubt the testimony as shown by this record clearly justified and authorized the jury to return a guilty verdict.
We therefore find that the conviction and sentence of appellant should be and it is hereby affirmed.
AFFIRMED.

ON APPELLANT'S APPLICATION FOR LEAVE TO FILE PETITION FOR WRIT OF ERROR CORAM NOBIS
As hereinbefore stated, on January 13, 1983, appellant filed his application for leave to file a Petition for Writ of Error Coram Nobis in the Circuit Court of the Second Judicial District of Bolivar County. We passed the consideration of this application until the hearing on the merits of the appeal for the reason that the application was not proper until that time arrived.
In his application, appellant attaches a copy of a taped statement taken from witness Nelson Bass on July 1, 1982, and Bass' affidavit of July 1, 1982. The contents of both of these instruments are that Bass completely recanted his testimony at the trial. He contended that he was threatened by Bolivar County officials into giving the testimony. Due to this contention, it is our opinion that the petition for Leave to File a Petition for Writ of Error Coram Nobis in the trial court should be sustained to determine whether or not such threats actually were made.
We are forced to conclude that in the event Bass' affidavit is accurate and truthful, this would be sufficient for the lower court to hear the petition for writ of error coram nobis. We hasten to point out that Mr. Bass now admits perjury on one or two occasions, which, of course, is a crime constituting a felony.
We, therefore, are of the opinion that appellant's application to file his Petition for Writ of Error Coram Nobis should be granted. The lower court should hear Mr. Bass and make its finding on what Mr. *1277 Bass' real position is in the incidents leading to appellant's indictment and in the posttrial actions of Mr. Bass.
We, therefore, grant appellant's application for leave to file his Petition for Writ of Error Coram Nobis with the Circuit Court of the Second Judicial District of Bolivar County.
APPLICATION GRANTED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.