514 So.2d 1215 (1987)
Robert W. YARBOROUGH
v.
STATE of Mississippi.
No. 57242.
Supreme Court of Mississippi.
November 4, 1987.
William W. Martin, Pascagoula, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:
This appeal from a trial court's denial of post-conviction relief arises out of a young rape victim's attempt to recant her trial testimony against her father. The underlying facts alternately tug at the heart strings and outrage the senses as the father's conviction of rape of his minor daughter appears to have destroyed an already fragile family relationship.
In addition to the credibility of the daughter/victim's recanting testimony, the appeal presents a question concerning the confidentiality of proceedings before a Youth Court. The trial court denied the application for post-conviction relief. For the reasons set forth below, we affirm.

II.
On August 8, 1983, Robert W. Yarborough, Petitioner below and Appellant here, was convicted in the Circuit Court of Jackson County, Mississippi, of the March 31, 1982, rape of his then fourteen-year-old daughter, K.Y. At trial, K.Y. had appeared and testified unequivocally to the facts of the rape. Upon conviction, the Circuit Court sentenced Yarborough to the custody of the Mississippi Department of Corrections for a term of twenty years. Yarborough took no appeal from this conviction and sentence.
On April 11, 1985, Yarborough filed in the Circuit Court his pro se motion to vacate his conviction and sentence. The motion was predicated in substantial part upon Yarborough's claim that the victim, K.Y., had recanted her earlier testimony.
The rape is said to have occurred sometime after 3:30 p.m. on March 31, 1982. At the trial on August 8, 1983, K.Y., by then fifteen, testified that her dad and his *1216 friend, Melvin St.Amant were drinking at St.Amant's house one afternoon. K.Y. was also there playing with St.Amant's children. K.Y.'s father, telling her that he needed to talk to her, took her into a bedroom and raped her. Melvin St.Amant testified that he had heard K.Y. yelling to her father, "Daddy, don't do it," and walked to the bedroom to investigate whereupon he saw Robert Yarborough having intercourse with K.Y. who was crying.
St.Amant's fifteen-year-old son, Justin, stated that he was in the backyard playing baseball when he heard K.Y. yelling. He went to the bedroom window and saw Yarborough having sex with his daughter. (He knew what sex was because he had seen it "a lot of times" on HBO.)
Yarborough denied raping his daughter. His wife, K.Y.'s mother, testified that at 4:45 p.m. Yarborough was asleep on the couch at their home about a block and a half from St.Amant's. She also testified that her husband was impotent due to a heart condition. The jury found Yarborough guilty and the court imposed a twenty year sentence. Yarborough's motion for a new trial was denied, and no appeal was perfected.
About a year after the conviction, K.Y. wrote two letters retracting her previous testimony. One of these was addressed to Yarborough's trial lawyer. The second was addressed "To Whom It May Concern" and was notarized on September 20, 1984. A typed version of the second letter was notarized on September 27, 1984. Apparently, a proceeding in which these letters were discussed was held in Youth Court at which time K.Y. reaffirmed that her father had raped her.
On April 11, 1985, Yarborough filed a pro se motion in the Circuit Court of Jackson County seeking relief from his conviction and sentence and relying upon, among other things, K.Y.'s recantation.
At the hearing, K.Y. testified that she had lied when she testified against her father in the August, 1983, trial because she was scared of Melvin St.Amant from the fact that her mother had told her St. Amant was dangerous. At the time of the hearing K.Y. had been in the custody of the Welfare Department for about three years. During that time she had not been permitted to live with her mother although recently she had been allowed more visits with her mother.
K.Y. admitted that in the Youth Court hearing she testified that her father raped her. She also admitted to having told the counselor at the Youth Court that her father had raped her because "I thought that's what the Welfare wanted to hear," and in doing so, she hoped to get her family back together.
Kathy King-Jackson, an Assistant D.A. who with another Assistant D.A. had prosecuted the original charge against Yarborough, testified that immediately after the trial ended with the conviction of Yarborough she had been alerted by noise outside her office. She had looked out the window and seen K.Y.'s family, particularly her mother, surrounding the girl and screaming abusive things at her and telling her she would pay for lying. She testified that she had talked to K.Y. many times before the trial and not once did she change her story but during the entire ordeal K.Y. had been very upset about the alienation from her family she was experiencing.
The Circuit Court denied the petition for post-conviction relief stating that K.Y. had told numerous people many times that her father raped her and it was only when she was among her family, with whom she desired to be reconciled, that K.Y. recanted her testimony.

III.
Yarborough's first assignment of error concerns the Circuit Court's refusal to exclude evidence that K.Y. had given testimony in the Youth Court to the effect that Yarborough, her father, had indeed raped her. This testimony was elicited in the hearing below in two ways. First, K.Y. was asked on cross-examination whether she had testified at a previous Youth Court hearing that her father had raped her. Second, Yarborough's trial attorney for his 1983 trial was called by the prosecution to *1217 give testimony that he had attended the Youth Court proceedings and that K.Y. had indeed stated that her original trial testimony to the effect that her father had raped her was true.
Yarborough relies on the statute governing the confidentiality of Youth Court proceedings, Miss. Code Ann. § 43-21-261 (1972). The precursor to Section 43-21-261, Miss. Code Ann. § 7185-09 (1942 as amended), stated that "the disposition of a child or any evidence given in the court in any proceeding concerning him shall not be admissible against the child in any case or proceeding in any other court." In Rankin v. State, 214 So.2d 811 (Miss. 1968), the conviction of a fourteen-year-old for burglary with intent to rape was reversed because the Youth Court referee was permitted to testify as to what the boy had testified in Youth Court.
To allow this testimony to be considered in the instant case, Yarborough argues, "completely negates the purpose and effect of the statute which is to protect the confidentiality of Youth Court proceedings."
In response, the State argues that the purpose behind the confidentiality statute, protecting minors, should not be perverted by allowing the Defendant to claim the protection. Because the very purpose of the hearing was to determine whether to "accept the veracity of the altered testimony," Peeples v. State, 218 So.2d 436, 439 (Miss. 1969), the evidence should be admissible.
Miss. Code Ann. § 43-21-251 states that Youth Court records are to be kept confidential and disclosed only via order of the Youth Court under Section 43-21-261.
Today's version of the statute authorizes disclosure to "a judge of any other court," Miss. Code Ann. § 43-21-261(1)(c) (Supp. 1986), but this may be done only on "order of the youth court."[1] Concededly, *1218 no such order was obtained. The record here fails to disclose by what means the prosecution availed itself of the records of the Youth Court regarding K.Y. Regardless of how they were obtained, the question before this Court is whether the Youth Court Act requires prior approval of the youth court before those records may be used to impeach the testimony of a witness in a criminal proceeding. We hold that it does not.
In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that the right of confrontation required that a criminal defendant be allowed to impeach the credibility of a prosecution witness in respect to any bias deriving from the witness' probationary status as a juvenile delinquent, statutes prohibiting disclosure of such records notwithstanding.
Mississippi had reached this conclusion three years earlier in Hamburg v. State, 248 So.2d 430 (1971). Construing Section 7185-09 of the Mississippi Code of 1942 Annotated, the Court stated that "It is apparent from the amendment to the code section that the legislature did not intend to prevent the knowledge of the juvenile's delinquency from being given to the proper state officials, particularly where such information could not be used against the juvenile delinquent." 248 So.2d at 433-34. The 1942 statutes provided that Youth Court records "shall be made available to any office or agency of the State of Mississippi or any subdivision thereof upon the request of such agency or subdivision." Also, the Court noted, the statute stated that "the disposition of a child or any evidence given in the court in any proceedings concerning him shall not be admissible against the child in any case or proceedings in any other court." 248 So.2d 430.
Kansas has held that the Sixth Amendment, as well as a similar provision in the state constitution, permit impeachment of a defense witness using his juvenile record. State v. Wilkins, 215 Kan. 145, 523 P.2d 728, 732 (1974).
Michigan courts have dealt with this issue numerous times. People v. Smallwood, 306 Mich. 49, 10 N.W.2d 303 (1943), concerned the testimony of a fifteen-year-old as prosecuting witness in a rape charge against her father. Defense counsel questioned her as to whether she had ever been in trouble with the juvenile authorities before. The court struck the question as violating the statute forbidding the disclosure of juvenile records in any proceeding "against such child for any purpose whatever, except in subsequent cases against the same child under this act." 10 N.W.2d at 304. The Michigan Supreme Court reversed.
This is a case where the word of one person against another is determinative. Although the girl's waywardness was shown to a certain extent by subsequent testimony, a careful reading of the record does not satisfy us that the entire facts were disclosed. Where the question was so close, all facts pertaining to the credibility of the principal witnesses should have been brought out.
The Court continues by saying that the instant case is similar to People v. Van Den Dreissche, 233 Mich. 38, 206 N.W. 339 (1925). Interestingly enough, Van Den Dreissche is even more similar to the case at bar. Van Den Dreissche consisted of a thirteen-year-old who recanted her former *1219 testimony that her father had raped her. The father had been convicted of rape, but the court, unconvinced by the daughter's recantation, denied relief.
In People v. Goolsby, 48 Mich. App. 519, 210 N.W.2d 781 (1973), the Michigan Court considered the use of prior testimony at a juvenile hearing to impeach a witness testifying against the defendant in a criminal case. Again the statute concerning confidentiality of juvenile records used the same language as that interpreted in Smallwood, above. Again, the Court allowed the impeachment.
When the focus of the non-juvenile proceeding changes from the juvenile to another, the applicability of the statute is seriously questioned. The necessity for shielding a juvenile from his past diminishes when he becomes a witness rather than a defendant. .. .
210 N.W.2d at 783.
Michigan Courts had already permitted the use of a juvenile record for impeachment but
The policy consideration supporting the use of prior recorded testimony as an impeachment tool may well outweigh the competing consideration supporting the non-disclosure of a juvenile record. Moreover, the juvenile character of this prior recorded testimony may be circumscribed without diminishing its impeachment value. Upon balance, we are not disposed to permit a witness, whether an accuser or supporter, to shield his prior recorded testimony by the invocation of the challenged statute.
210 N.W.2d at 783.
Returning to Mississippi law, our question is narrower than it might seem. Section 43-21-261(1)(c) empowers the youth court in its sound discretion to authorize disclosure to a judge of any other court. The sort of disclosure made here is one the youth court ought authorize. Our question is whether the Circuit Court must require presentation of a ticket from the youth court before the impeachment testimony may be used. We answer in the negative. See Evans v. State, 422 So.2d 737, 744-45 (Miss. 1982).
The credibility of K.Y.'s recanting testimony is the tightrope upon which Yarborough's conviction stands or falls. The reasoning and authorities establish that the youth court would abuse its discretion if it did not authorize disclosure here. We will not reverse for want of form in face of such facts.[2]
Youth court confidentiality is for the protection of the youth. We discern no rational reading of the statutory scheme which would give an adult a shield when the object of the proceedings is the truth of charges against him, not the youth.
The assignment of error is denied.

IV.
Yarborough next challenges the Circuit Court's findings that K.Y.'s testimony at the original trial was correct and that her proffered recantation should not be credited. The Circuit Court, in denying Yarborough's motion to vacate, stated that K.Y. had told many people many times that her father had raped her but
It seems that at the times the testimony is recanted it's always in the presence of members of her family. And if you remove members of her family, immediately thereafter she says that she lied and that her father did rape her. You then bring members of the family back in contact with her and she recants again. And then you remove the members of the family and she says, no, she was lying when she said he didn't rape her and that he did rape her. She on many occasions has said that he did rape her. And it's the opinion of the court that the recanted testimony at this time is influenced solely by members of her family and K.Y.'s natural desire to be reconciled *1220 with members of her family and go home. This young girl has been out of that home now approximately two years. It's only natural that she wants to return home and be with members of her family. It's also natural that Mr. Yarborough, having a serious heart condition, and the first time the testimony was recanted was shortly after he had a serious heart attack and was confined in University Medical Center, was visited by K.Y. who at that time was also staying with a foster family in Jackson. Shortly after visiting with her father, and I'm sure that was a very emotional and trying time for this young girl, but shortly after that she recanted her testimony for the first time and at various times since has occasionally recanted it, only to at some later date say, no, it was all true. The opinion of the court is that this is not sufficient evidence presented here to require that the judgment be set aside and a new trial be granted.
Thereupon the Circuit Court expressly found that K.Y.'s
recanting of her trial testimony was the product of: (a) coaxing from her family; (b) fear that her father would die in jail; (c) the desire to be reunited with her family; (d) to gain love and affection from her family; and (e) the natural love and affection of a child for her parents and siblings.
The Circuit Court concluded by noting that the rape was witnessed by three persons, K.Y., Melvin St.Amant, and St.Amant's son, and although Yarborough alleged St.Amant was inebriated at the time of the alleged rape, St.Amant's son's testimony had not been discredited.
Experience teaches all courts a healthy skepticism toward recanted testimony. For one thing, if the recanter's change of testimony is of consequence, likely he or she has committed perjury at some point. Second, the new trial suggested by the recantation will necessarily put the prosecution at a disadvantage with respect to its other witnesses whose memories necessarily will fade with time. Third, crediting such testimony may only diminish the import of the trial as a momentous event. Such considerations have produced comments such as the following:
No form of proof is so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character.
People v. Van Den Dreissche, 233 Mich. 38, 206 N.W. 339, 341 (1925) quoting People v. Shilitano, 218 N.Y. 161, 112 N.E. 733 (1916).
Our skepticism does not translate into callousness, however. First, the Circuit Court was quite correct in granting Yarborough a full evidentiary hearing in the face of the claim of recanted testimony. See Tobias v. State, 505 So.2d 1014, 1015 (Miss. 1987); Sanders v. State, 439 So.2d 1271, 1276-77 (Miss. 1983). Where the witness' recantation undermines the Circuit Court's confidence in the correctness of the outcome at trial, a new trial should be ordered. See Gathings v. State, 46 So.2d 800 (Miss. 1950); cf. Malone v. State, 486 So.2d 367, 369 (Miss. 1986).
In the end we are reviewing a finding of ultimate fact, one made by a trial court sitting without a jury. We do not reverse such findings where they are supported by substantial credible evidence. See, e.g., Anderson v. Burt, 507 So.2d 32, 36 (Miss. 1987); Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss. 1986). Watts v. State, 492 So.2d 1281, 1289 (Miss. 1986); and Gavin v. State, 473 So.2d 952, 954 (Miss. 1985). Here there is substantial credible evidence in the record supporting the Circuit Court's finding that K.Y.'s original testimony at the 1983 trial was correct and that Petitioner Yarborough's showing in the aggregate was insufficient to undermine confidence in the outcome of his original trial.[3] Denial of relief here is consistent *1221 with our other cases which have rejected a claim of changed or recanted testimony as a basis for granting post-conviction relief. See Smith v. State, 492 So.2d 260, 264-65 (Miss. 1986); In Re Hill, 460 So.2d 792, 803 n. 10 (Miss. 1984).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Miss. Code Ann. (1972)

§ 43-21-261. Disclosure of records.
(1) Except as otherwise provided in this section, records involving children shall not be disclosed other than to necessary staff of the youth court, except pursuant to an order of the youth court specifying the person or persons to whom the records may be disclosed, the extent of the records which may be disclosed and the purpose of the disclosure. Such court orders for disclosure shall be limited to those instances in which the youth court concludes in its discretion that disclosure is required for the best interests of the child, the public safety or the functioning of the youth court and then only to the following persons:
(a) the judge of another youth court or member of another youth court staff;
(b) the court of the parties in a child custody or adoption cause in another court;
(c) a judge of any other court or members of another court staff;
(d) representatives of a public or private agency providing supervision or having custody of the child under order of the youth court;
(e) any person engaged in a bona fide research purpose, provided that no information identifying the subject of the records shall be made available to the researcher unless it is absolutely essential to the research purpose and the judge gives prior approval; and
(f) the Mississippi Employment Security Commission, or its duly authorized representatives, for the purpose of a child's enrollment into the job corps training program as authorized by Title IV of the Comprehensive Employment Training Act of 1973 (29 U.S.C.A. Section 923 et seq.). However, no records, reports, investigations or information derived therefrom pertaining to child abuse or neglect shall be disclosed.
Law enforcement agencies may disclose information to the public concerning the taking of a child into custody for the commission of a delinquent act without the necessity of an order from the youth court. The information released shall not identify the child or his address.
(2) Any records involving children which are disclosed under an order of the youth court and the contents thereof shall be kept confidential by the person or agency to whom the record is disclosed except as provided in the order. Any further disclosure of any records involving children shall be made only under an order of the youth court as provided in this section.
(3) Upon request, the parent, guardian or custodian of the child who is the subject of a youth court cause or any attorney for such parent, guardian or custodian, shall have the right to inspect any record, report or investigation which is to be considered by the youth court at a hearing.
(4) Upon request, the child who is the subject of a youth court cause shall have the right to have his counsel inspect and copy any record, report or investigation which is filed with the youth court.
(5) The youth court prosecutor or prosecutors, the county attorney, the district attorney, the youth court defender or defenders, or any attorney representing a child shall have the right to inspect any law enforcement record involving children.
(6) The judges of the circuit and county courts, any persons authorized by such judges, and pre-sentence investigators for the circuit courts, as provided in section 47-7-9, shall have the right to inspect any youth court records of a defendant which were made after his sixteenth birthday.
(7) The victim of an offense committed by a child who is the subject of a youth court cause shall have the right to be informed of the child's disposition by the youth court.
Added April 1, 1986
(8) The Classification Committee of the State Department of Corrections, as provided in Section 47-5-103, shall have the right to inspect any youth court records of any offender in the custody of the department who as a child or minor was a juvenile offender or was the subject of a youth court cause of action, and the State Parole Board, as provided in Section 47-7-17, shall have the right to inspect such records when said offender becomes eligible for parole.
[2] Nothing said here should signal any attitude of judicial laxity toward Section 43-21-261's confidentiality requirements. Where, as here, the matter is presented as a point of evidence in another court, the matter is controlled by the law of evidence and courts must be sensitive to the times when the privilege must give way when balanced against the court's duty to search for truth. See Rules 501 and 609(d), Miss.R.Ev., effective January 1, 1986.
[3] We are concerned here with a special kind of recanting. The available legal and behavioral science literature suggests that in child sex abuse cases recantation is a matter of not infrequent occurrence. See, e.g., McCord, Expert Psychological Testimony About Child Complaints In Sexual Abuse Prosecutions: A Foray Into The Admissibility Of Novel Psychological Evidence, 77 Journ. of Criminal Law & Criminology 1, 61 (1986); Cohen, The Unreliability Of Expert Testimony On The Typical Characteristics Of Sexual Abuse Victims, 74 Georgetown Law Journal 429, 443-48 (1985); Summit, The Child Sexual Abuse Accommodation Syndrome, 7 Child Abuse and Neglect 177 (1983); State v. Middleton, 294 Or. 427, 435-36, 657 P.2d 1215, 1219-20 (1983); see also House v. State, 445 So.2d 815, 820-21 (Miss. 1984). Suffice it to say that the testimony of two independent eyewitnesses served to relieve the Circuit Court  and this Court on appeal  of the necessity for grappling with the troublesome and controversial child sex abuse recantation problem.