## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 95-KA-00971-SCT

*TONY LYNN ADAMS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/95 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE MCCRORY |
| DISTRICT ATTORNEY: | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 8/7/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/29/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

Tony Lynn Adams appeals the denial of his petition for post-conviction relief from the Circuit Court of Quitman County. Adams was convicted of the burglary of an occupied dwelling and was sentenced as a habitual offender to a term of fifteen years in the custody of the Mississippi Department of Corrections. Adams appealed and this Court affirmed his conviction and sentence. *Adams v. State*, 611 So. 2d 1013 (Miss. 1993). Subsequently, Adams filed and this Court granted his application for leave to proceed in the trial court for post-conviction relief.

On August 30, 1995, an evidentiary hearing was held to consider Adams' motion before Circuit Court Judge John L. Hatcher. At this hearing, Adams asked the court to appoint counsel for his defense, or in the alternative, to grant a continuance so that he might employ counsel. The circuit court stated that Adams had sufficient time to request or retain an attorney and that both motions were denied.

On September 5, 1995, the circuit court entered an order that denied Adams' petition for post-conviction relief. Aggrieved by the judgment below, Adams' asks this Court to consider the following assignments of error:

**I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR APPOINTMENT OF AN ATTORNEY?**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR POST-CONVICTION RELIEF?**

**III. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A CONTINUANCE?**

## STATEMENT OF THE FACTS

Adams was convicted of the 1990 burglary of the dwelling of Adams' father, Earnest Bush. Adams was sentenced as a habitual offender and ordered to serve fifteen years imprisonment in the custody of the MDOC. Adams filed an appeal which was affirmed by this Court, *Adams v. State*, 611 So. 2d 1013 (Miss. 1993).

On August 14, 1994, based upon the recanted testimony of Earnest Bush, Adams requested this Court to grant his application for leave to proceed in the trial court for post-conviction relief. On January 30, 1995, this Court granted Adams' application. On August 7, 1995, the Circuit Court of Quitman County set the evidentiary hearing to be August 30, 1995. On August 25, 1995, Adams filed a request to subpoena Earnest Bush and Adams' sister, Betty Bush.

Upon commencement of the evidentiary hearing, Adams stated that he wanted to postpone the hearing until he retained an attorney. Adams stated that he did not know about the law and that a prison writ writer had prepared all of his filings. Judge Hatcher stated that Adams' request for an attorney was untimely and that the hearing would proceed. Adams stated that he did not have any witnesses that would testify, including himself, but that he did have a signed affidavit by Earnest Bush that recanted his trial testimony. Adams stated he had requested that subpoenas be issued for his father and sister, but that they lived in Milwaukee, Wisconsin. Judge Hatcher received Earnest Bush's affidavit into evidence.

District Attorney Laurence Y. Mellen called Investigator Tommy Taylor of the District Attorney's Office to testify regarding a conversation he had with Betty Bush. Taylor testified that he had been asked to determine if Earnest Bush had signed the affidavit, in which the trial testimony is recanted. Taylor testified that Earnest Bush had moved away from Marks, Mississippi, and that he now lived in Milwaukee, Wisconsin, with his daughter Betty Bush. Taylor called several times before reaching Betty Bush, who informed Taylor that Earnest Bush had suffered a stroke and had moved to her home so that she could provide care to her father.[1] Betty Bush stated that her father was too weak to speak with Taylor, but that she would help in any way she could. Betty Bush stated that she was familiar with the affidavit that her father had signed, because she handled her father's mail and had read the affidavit to him. Taylor asked Betty if her father had said he agreed with the statements in the affidavit that indicated he falsely testified at the trial and now recanted that testimony. Betty stated that Earnest told her that Adams was wrong and that he knew it was Adams who committed

the burglary. Betty stated that Earnest signed the affidavit after she told him that Adams only wanted to be released from prison and that he would never see Adams again.

Tony Adams testified that he had not spoken with Betty or Earnest, instead, on the advice of his writ writer he sent the affidavit to his father. Adams contended that he should be released from custody because his father had testified against him at trial and had later recanted the trial testimony. Upon cross-examination, Adams testified his writ writer read the trial transcript and had prepared the affidavit and suggested that Adams send it to his father. Adams admitted that neither he nor the writ writer had spoken with Earnest. Adams stated that the writ writer had told him that Earnest may not be mad anymore and that he may sign the affidavit.

At the conclusion of closing argument, Judge Hatcher announced that he would deny Adams' motion and stated:

> This case seems to fit the same factual scenario as the case of **Yarborough v. State**, 514 So. 2d 1215, a 1987 Mississippi Supreme Court case, which involved the defendant filing a pro se motion to vacate his sentence and conviction. In that case, as in this case, the victim is alleged to have recanted his earlier testimony, and in Yarborough, as in here, a notarized statement of the victim was used to show a change in the testimony. The trial court denied the petition, and the Supreme Court affirmed. In that decision the Supreme Court held: "Experience teaches all courts a healthy skepticism toward recanted testimony. For one thing, if the recanter's change of testimony is of consequence, likely he or she has committed perjury at some point. Second, the new trial suggested by the recantation will necessarily put the prosecution at a disadvantage with respect to other witnesses whose memories will necessary fade with time. Third, crediting such testimony may only diminish the import of the trial as a momentous event."
>
> In this case, the only thing that has been presented regarding recanted testimony of the victim is an affidavit, and I must say that an affidavit that was procured under these circumstances is somewhat suspicious. It was prepared by a writ writer who had not talked to the affiant ahead of time nor had the Defendant talked to his father ahead of time. It was simply mailed to Milwaukee, Wisconsin. Then the testimony before me now indicates that the sister of the Defendant, the daughter of the victim, indicated that he was signing the thing simply to let the Defendant go, and since he would never see him again, he didn't have any problem signing it. Those persons are not here. There's no way for the State or the Court to cross-examine an affidavit. Of course, the original testimony was shortly after the event took place. The Defendant was testifying in open court, under oath, subject to cross-examination. All of the tests as to truthfulness were available and utilized at that time. No such test as to truthfulness appears when all you have is an affidavit executed under somewhat suspicious Circumstances. That being the case, I will do as the trial judge did in the **Yarborough** case, and I will deny the petition, and I will enter an order accordingly.

On September 5, 1995, Judge Hatcher entered the order that denied Adams' motion for post-conviction relief. On September 20, 1995, Adams filed this appeal.

## DISCUSSION OF THE ISSUES

## I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST

**FOR APPOINTMENT OF AN ATTORNEY?**

A review of the hearing transcript reveals that the evidentiary hearing was held seven months after this Court granted Adams leave to proceed with his petition for post-conviction relief. During that interval, Adams proceeded *pro se* and never asked the circuit court to appoint counsel. Adams waited until the start of the evidentiary hearing to ask the circuit court to postpone the hearing so that he could retain counsel or, alternatively, that he be appointed counsel. Adams now contends that the lower court committed error when he was refused a continuance or a court appointed attorney. Miss. Code Ann. § 99-39-23 (1) states:

> If an evidentiary hearing is required, the judge may appoint counsel for a petitioner who qualifies for the appointment of counsel under section 99-15-15, Mississippi Code of 1972.

The language of the statute gives the judge discretion to decide if counsel should be appointed for an indigent in an evidentiary hearing. Judge Hatcher exercised the discretion that the legislature provided, therefore his decision not appoint counsel for Adams cannot be set aside.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR POST-CONVICTION RELIEF?

In the end we are reviewing a finding of ultimate fact, one made by a trial court sitting without a jury. We do not reverse such findings where they are supported by substantial credible evidence. *Yarborough v. State*, 514 So. 2d 1215, 1220 (Miss. 1987); *Anderson v. Burt*, 507 So. 2d 32, 36 (Miss. 1987); *Dunaway v. Busbin*, 498 So. 2d 1218, 1221 (Miss. 1986). *Watts v. State*, 492 So. 2d 1281, 1289 (Miss. 1986); and *Gavin v. State*, 473 So. 2d 952, 954 (Miss. 1985).

The only evidence produced by Adams at the evidentiary hearing was a signed affidavit by Earnest Bush, in which Earnest recanted his trial testimony. Based upon this recantation, Adams contends that the circuit court committed error when it denied his motion for post-conviction relief. Adams admitted that neither he nor the writ writer that prepared the affidavit, had any communication with Earnest Bush to determine if the information contained in affidavit was correct. Adams testified that he sent the letter to his father in hope that his father was not angry any longer. Further, Taylor testified that he had spoken with Betty Bush, who stated that she had convinced her father to sign the affidavit so that Adams might get out of prison.

In reference to recanted testimony, this Court has stated:

> Experience teaches all courts a healthy skepticism toward recanted testimony. For one thing, if the recanter's change of testimony is of consequence, likely he or she has committed perjury at some point. Second, the new trial suggested by the recantation will necessarily put the prosecution at a disadvantage with respect to its other witnesses whose memories necessarily will fade with time. Third, crediting such testimony may only diminish the import of the trial as a momentous event. Such considerations have produced comments such as the following:

> No form of proof is so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character.

***People v. Van Den Dreissche***, 233 Mich. 38, 206 N.W. 339, 341 (1925) quoting ***People v.Shilitano***, 218 N.Y. 161, 112 N.E. 733 (1916).

***Yarborough***, 514 So. 2d at 1220.

Here there is substantial credible evidence in the record supporting the circuit court's finding that Earnest Bush's trial testimony was correct and that Adam's showing was insufficient to undermine confidence in the outcome of his original trial. Therefore, this issue is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A CONTINUANCE?

In a case similar to the case *sub judice*, this Court stated that a defendant who was indicted in July, 1977, and tried in May, 1978, had abundant time and should have arranged in advance of the day trial was to begin if he wanted to retain other counsel. ***Collins v. State***, 369 So. 2d 500, 501 (Miss. 1979). Further, this Court stated that Collins' request was untimely and his motion for a continuance was not worthy of favorable consideration. ***Id***. In the case at bar, Adams had seven months, after he was notified that he would have an evidentiary hearing, in which to retain an attorney, therefore, Judge Hatcher did not error in refusing to grant a continuance.

### CONCLUSION

An evidentiary hearing was held to consider Earnest Bush's recanted trial testimony. The only evidence offered by Adams was the suspicious affidavit signed by Earnest, which recanted his trial testimony. However, Adams own testimony revealed that the statement had been prepared and mailed in hope that Earnest might sign the affidavit. Additionally, other evidence indicated that Earnest signed the affidavit although he did not support the assertions contained therein. The circuit court properly denied Adams' motion for post-conviction relief. Pursuant to legislative created discretion, the circuit court properly denied Adams' request for a court appointed. Further, Adams' motion for a continuance was untimely and properly denied by the lower court.

**LOWER COURT'S DENIAL OF POST-CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, SMITH AND MILLS, JJ., CONCUR. BANKS AND McRAE, JJ., CONCUR IN RESULT ONLY.**

1. Taylor recorded his conversation with Betty Bush. The tape and transcript of the discussion were entered into evidence.