789 So.2d 814 (2001)
Antonio HARDIMAN a/k/a Antonio G. Hardiman a/k/a Antonio Gus Hardiman a/k/a `Twon', Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-CP-00896-COA.
Court of Appeals of Mississippi.
May 29, 2001.
*815 Antonio Hardiman, Appellant, pro se.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and LEE, JJ.
SOUTHWICK, P.J., for the court:
¶ 1. Antonio Hardiman sought relief from convictions for aggravated assault and armed robbery. The Circuit Court of Lincoln County dismissed the motion without a hearing. Hardiman appeals. We hold that since an affidavit was presented in which the sole witness supporting one of the charges recanted his testimony, Hardiman should have been granted an evidentiary hearing. Therefore, we reverse and remand for further proceedings.

FACTS
¶ 2. On May 26, 1995, Jimmy Whittington received two gun shot wounds in an incident at the residence of George Robertson in Bogue Chitto, Mississippi. Whittington informed police that Antonio Hardiman had attempted to rob him, and during the struggle that ensued, Hardiman shot him. Hardiman was subsequently indicted for armed robbery and aggravated assault.
¶ 3. The following was Whittington's testimony at trial. As he entered the hallway of the house, he was approached by Hardiman who put a gun to his face and instructed him to "give it up." Although Hardiman's face was partially covered by a ski mask, Whittington recognized Hardiman. They had often encountered each other at this residence, which was reportedly a place where gambling, drinking and smoking of crack cocaine occurred on a regular basis. When Whittington told Hardiman that he did not have any money, Hardiman fired a warning shot down the hallway. Whittington grabbed Hardiman's wrist, which led to a struggle. One of the shots struck Whittington in his arm, and he fell to the floor. Hardiman ran out of the house, then turned around and ran back in to fire one more shot at Whittington. This last shot glanced off the back of Whittington's neck.
¶ 4. James Dillon also testified for the State. Dillon testified that he was in the house with Hardiman when Whittington arrived. Dillon and Hardiman discussed selling fake drugs to Whittington. Dillon left the house through a window once Whittington arrived because of what he feared was going to occur. Dillon stated that when he left the house, Hardiman had a pistol and a skull cap that was like a mask on his head. Shortly after leaving, Dillon heard what likely was a struggle *816 inside, followed by a gunshot. Dillon then heard Hardiman say "get back" or "get down" and then there were two more gunshots. Dillon observed Hardiman leave and then reenter the house. Shortly after Hardiman went back into the house, Dillon heard another gunshot.
¶ 5. Hardiman testified in his own behalf at trial. He claimed that he did not shoot Whittington in an attempted armed robbery. Hardiman testified that Whittington had come to the house to buy crack cocaine. Whittington became angry and came at him with a knife when Hardiman refused to sell drugs because Whittington already owed money from a gambling debt. Hardiman claimed that two warning shots were fired and that a third shot was fired in self defense. Hardiman stated that he then left the house and denied going back and firing an additional shot at Whittington.
¶ 6. Hardiman was convicted of aggravated assault and armed robbery on November 7, 1995. The Mississippi Supreme Court affirmed the conviction on June 11, 1998. On August 30, 1999, Hardiman filed an application with the Supreme Court for leave to proceed in trial court on postconviction relief because of newly discovered evidence. Leave was granted, which is a necessary step if the original conviction was affirmed by the Supreme Court. Miss.Code Ann. § 99-39-7 (Rev.2000). Hardiman filed his pleadings, but the circuit court denied the motion. This appeal followed.

DISCUSSION
¶ 7. In the affidavit attached to Hardiman's motion for post-conviction relief, Whittington swore that his statement to police and his trial testimony were fabricated because of pressure by the police to say that Hardiman was trying to rob him. His affidavit alleges that Hardiman shot him, but there was no robbery attempt. The court denied the motion without a hearing.[1]
¶ 8. Our review of Mississippi case law discovers no precedent in which an evidentiary hearing was avoided when a motion for post-conviction relief is based upon an affidavit in which the sole witness to a crime recants his testimony. Turner v. State, 771 So.2d 973, 976 (Miss.Ct.App. 2000); Yarborough v. State, 514 So.2d 1215, 1220 (Miss.1987); Tobias v. State, 505 So.2d 1014, 1015 (Miss.1987); Sanders v. State, 439 So.2d 1271, 1276-77 (Miss. 1983). "Experience teaches all courts a healthy skepticism toward recanted testimony.... Our skepticism does not translate into callousness, however." Yarborough, 514 So.2d at 1220.
¶ 9. We note that many of the precedents are relying upon authority that predates the post-conviction relief statutes that were passed in 1984. 1984 Miss. Laws ch. 378, codified at Miss.Code Ann. §§ 99-39-1 through 99-39-29 (Rev.2000). The earliest precedents that continue with some frequency to be cited were applying procedures for a writ of error coram nobis. In re Smith, 457 So.2d 911, 914 (Miss.1984); Sanders v. State, 439 So.2d 1271, 1276-77 (Miss.1983). In 1987 the Supreme Court applied the precedents to the post-conviction relief procedures. Tobias v. State, 505 So.2d 1014, 1015 (Miss. 1987). In all three cases the Supreme Court stated that the presentation of affidavits in which key witnesses recanted their testimony required that an evidentiary hearing be held. Id.; In re Smith, 457 So.2d at 915; Sanders, 439 So.2d at 1276-77.
*817 ¶ 10. In order to understand if this law is still applicable, we note that the reason to order a hearing when a writ of error coram nobis was presented based on sufficient allegations of newly discovered evidence was "to give the State an opportunity to controvert the allegations, demand proof, if it so desired, and offer such contradictory evidence as it might desire." Smith v. State, 492 So.2d 260, 263 (Miss. 1986), quoting Lang v. State, 232 Miss. 616, 100 So.2d 138, 140 (1958). The Court later noted that cases such as Smith v. State had been superceded by the post-conviction statute. McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989). Even so, under the post-conviction relief regime, a hearing is to be held unless "it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief...." Miss.Code Ann. §§ 99-39-11(2) & 99-39-19(1) (Rev.2000). These cited precedents, whose lineage extends back prior to the post-conviction relief statutes, imply that the validity of a recantation by the central witness to a crime cannot be summarily resolved. There must be a hearing. Under the post-conviction relief statutes, that same principle would simply be phrased as being a matter that cannot be determined "from the face of the motion" and attached exhibits.
¶ 11. In the present case, the trial judge denied relief because there were two corroborating witnesses that Hardiman had actually been in the house wearing a mask and carrying a gun. That evidence, however, is also consistent with the affidavit in which Whittington recants his trial testimony. That Hardiman was present and shot Whittington were uncontested at the trial. What Hardiman has denied all along is that he ever attempted a robbery. The only evidence that Hardiman was guilty of robbery came from Whittington. That witness now swears otherwise.
¶ 12. The trial court no doubt recognized these same facts but stated that the recantation "would not conclusively cause a different result." The State makes the same point, quoting the Supreme Court's opinion in the second appeal of Tobias. Tobias v. State, 584 So.2d 1276, 1279 (Miss. 1991). The problem, though, is that on the first appeal the Supreme Court reversed because Tobias was entitled to and was denied an evidentiary hearing to explore whether the affidavit of recantation was truthful or whether the witnesses trial testimony still appeared accurate. Tobias, 505 So.2d at 1015. We find ourselves in the present case in the equivalent position of the Supreme Court in Tobias I, not Tobias II. At the stage at which Hardiman's motion was dismissed, the Court had relied solely on the pleadings. Under the logic of the precedents that we have cited, we hold that an evidentiary hearing must be held so that the trial court can better evaluate whether Whittington lied during Hardiman's trial or whether he lied in his affidavit.
¶ 13. We reverse and remand to the trial court for an evidentiary hearing on the motion for post-conviction relief. We intimate no view on the permissible outcomes of that hearing.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY DENYING POST-CONVICTION RELIEF IS REVERSED AND REMANDED FOR AN EVIDENTIARY HEARING. ALL COSTS ARE ASSESSED TO LINCOLN COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.
NOTES
[1] The docket and the trial court's order do not mention a hearing. Hardiman asserts that there was no hearing and the State is silent both factually and legally on the point.